Todd A. Walburg (Admitted to EDMI)
taw@mccunelawgroup.com
David C. Wright (Admitted to EDMI)
dcw@mccunelawgroup.com
Scott B. Baez (CA Bar No. 330485)
sbb@mccunelawgroup.com
**McCUNE LAW GROUP**
31 W. Stuart Avenue, Suite 300
Redlands, California 92374
Telephone: (909) 557-1250

Kevin C. Riddle (MI Bar No. P57435)
k.riddle@fiegerlaw.com
**FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**
19390 West 10 Mile Road
Southfield, Michigan 48075-2463
Telephone: (248) 355-5555

***Attorneys for Plaintiff and the Putative Class***

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF MICHIGAN**

JEFFREY TERRELL; MONA MAYFIELD; DAVID REZABEK; FRANK BEVEN; DEREK CYTRYN; JIM PAONE; DAVID MOCKUS and KEVIN KAINTZ, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

FORD MOTOR COMPANY,

Defendants

**Case No. 2:25−cv−13633−BRM−KGA**

**Honorable Brandy R. McMillon**

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

**_Page_**


TABLE OF CONTENTS ..... i

I NATURE OF THE ACTION ..... 1

II JURISDICTION ..... 4

III VENUE ..... 5

IV PARTIES ..... 5

- A. Plaintiff Jeffrey Terrell (New York) ..... 5
- B. Plaintiff Mona Mayfield (California) ..... 6
- C. Plaintiff David Rezabek (Illinois) ..... 7
- D. Plaintiff Frank Beven (Michigan) ..... 8
- E. Plaintiff Derek Cytryn (New Jersey) ..... 8
- F. Plaintiff Jim Paone (New Jersey) ..... 9
- G. Plaintiff David Mockus (Pennsylvania) ..... 10
- H. Plaintiff Kevin Kaintz (Pennsylvania) ..... 11
- I. Defendant Ford Motor Company ..... 12

V FACTUAL ALLEGATIONS ..... 13

- A. The Class Vehicles Suffer from the Second Row Seatbelt Defect ..... 13
- B. Ford's Knowledge of the Second Row Seatbelt Defect ..... 67
- C. Ford's Actions Harmed Consumers and Placed Public Safety at Risk ..... 73

VI TOLLING OF STATUTES OF LIMITATIONS ..... 74

VII CLASS ALLEGATIONS ..... 74

VIII CAUSES OF ACTION ..... 77

- A. Claims Brought on Behalf of the New York Class ..... 77
  - FIRST CAUSE OF ACTION: VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 349 ..... 77

## TABLE OF CONTENTS (cont.)

***Page***


SECOND CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ..... 78

B. Claims Brought on Behalf of the California Class ..... 79

THIRD CAUSE OF ACTION: VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (“CLRA”) ..... 79

FOURTH CAUSE OF ACTION: VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (UCL) ..... 82

FIFTH CAUSE OF ACTION: VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW ..... 83

SIXTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS ..... 84

SEVENTH CAUSE OF ACTION: COMMON LAW FRAUDULENT CONCEALMENT ..... 86

C. Claims Brought on Behalf of the Illinois Class ..... 86

EIGHTH CAUSE OF ACTION: VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT ..... 86

NINTH CAUSE OF ACTION: BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY ..... 89

TENTH CAUSE OF ACTION: FRAUD BY CONCEALMENT ..... 91

ELEVENTH CAUSE OF ACTION: UNJUST ENRICHMENT ..... 92

D. Claims Brought on Behalf of the Michigan Class ..... 93

TWELFTH CAUSE OF ACTION: VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT ..... 93

## TABLE OF CONTENTS (cont.)

*Page*


THIRTEENTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ........ 94

FOURTEENTH CAUSE OF ACTION: FRAUD BY CONCEALMENT .. 95

FIFTEENTH CAUSE OF ACTION: UNJUST ENRICHMENT ........ 96

E. Claims Brought on Behalf of the New Jersey Class ........ 97

SIXTEENTH CAUSE OF ACTION: VIOLATIONS OF THE NEW JERSEY COMMERICAL FRAUD ACT ........ 97

SEVENTEENTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ........ 100

EIGHTEENTH CAUSE OF ACTION: UNJUST ENRICHMENT ........ 101

F. Claims Brought on Behalf of the Pennsylvania Class ........ 102

NINETEENTH CAUSE OF ACTION: VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ........ 102

TWENTIETH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ........ 104

TWENTY-FIRST CAUSE OF ACTION: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING ........ 106

TWENTY-SECOND CAUSE OF ACTION: UNJUST ENRICHMENT .. 107

IX PRAYER FOR RELIEF ........ 108

JURY DEMAND ........ 109

# FIRST AMENDED CLASS ACTION COMPLAINT

1. Plaintiffs JEFFREY TERRELL, MONA MAYFIELD, DAVID REZABEK, FRANK BEVEN, DEREK CYTRYN, JIM PAONE, DAVID MOCKUS, and KEVIN KAINTZ (collectively "Plaintiffs"), by and through their attorneys, hereby bring this class and representative action against Defendant Ford Motor Company ("Ford" or "Defendant").

## I NATURE OF THE ACTION

2. This is an automotive product liability putative class action involving an alleged safety defect in the second row seatbelts in certain Ford Explorer vehicles.

3. All allegations herein are based upon information and belief except those allegations which pertain to Plaintiffs or their counsel. Allegations pertaining to Plaintiffs or their counsel are based upon, *inter alia*, Plaintiffs or their counsel's personal knowledge, as well as Plaintiffs' or their counsel's own investigation. Furthermore, each allegation alleged herein either has evidentiary support or is likely to have evidentiary support, after a reasonable opportunity for additional investigation or discovery.

4. Plaintiffs have brought this class and representative action to assert claims in their own right, and as the class representative of all other persons similarly situated. This is a class action lawsuit on behalf of Plaintiffs and a class of **current owners of model year 2011-2019 Ford Explorer vehicles with second row inflatable seatbelts** (the "Class Vehicles").

5. This action arises from Ford's failure to disclose to Plaintiffs and other consumers of the Class Vehicles that they are subject to a defect with the seatbelt system in the second row of the vehicle, which is deficient and prone to failure (the "Second Row Seatbelt Defect" or simply the "Defect"). This litigation seeks to adequately remedy the Second Row Seatbelt Defect.

6. See images of inflatable seatbelts below.



Inflatable seat belts look and feel different than traditional seat belts.



7. Seatbelts are part of the 2011-2019 Ford Explorer's primary restraints system. These and other vehicles also include a supplemental restraints system (SRS), which includes various airbags.

8. For the first time in 2011, Ford introduced "inflatable seatbelts" as an SRS in the second row outboard seats of 2011-2019 Ford Explorers, which are essentially airbags in the shoulder straps of the seatbelts. This Second Row Seatbelt system is defective and results in the seatbelts not functioning properly, and also triggers an airbag warning light, indicating that the vehicle's airbags are non-operational. Non-functioning seatbelts and non-operational airbags both constitute a serious safety defect.

9. Each of the Class Vehicles rolled off the assembly line, and was initially sold, with the Second Row Seatbelt Defect, which is a defective latching system that causes the seatbelts to come undone and release unintentionally, or to become stuck closed, and which triggers the airbag warning light on the dashboard.

10. The Second Row Seatbelt Defect poses a serious safety risk to the passengers of the Class Vehicles. The defective seatbelt system can cause the occupant's seatbelts to fail, which is particularly dangerous in crash conditions and even more so considering the fact that children are often seated in the second row seats in vehicles.

11. The failure of the seatbelts exposes occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death. As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced the Second Row Seatbelt Defect, placing themselves and those around them in immediate danger.

12. Ford actively concealed the fact of the Second Row Seatbelt Defect from Class Vehicle purchasers. Its concealment of these important facts not only threatened the safety of occupants, but diminished the intrinsic and resale value of the Class Vehicles.

13. Ford has long been aware of the Second Row Seatbelt Defect, but refuses to repair the Class Vehicles when they display symptoms consistent with the defect, instead choosing to recommend costly repairs the vehicle owner must pay for out-of-pocket.

14. Many owners and lessees of the Class Vehicles have communicated with Ford and/or its agents to request that they remedy and/or address the Second Row Seatbelt Defect at no expense. Ford has failed to do so, even when the vehicle in question was in the warranty period.

15. Not only has Ford refused to take any action to correct the Second Row Seatbelt Defect when it manifests in the Class Vehicles outside of the warranty period, in many instances, Ford requires owners to pay for purported fixes even within the warranty period. Because the Second Row Seatbelt Defect can manifest outside of the warranty period for the Class Vehicles—and given Ford's knowledge about this concealed, safety-related defect—Ford's attempt to limit the warranty with respect to the Second Row Seatbelt System Defect is unconscionable and unenforceable here.

16. Despite having notice and knowledge of the Second Row Seatbelt Defect from the numerous complaints it has received, information received from dealers,

National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, including pre-sale testing, Ford has failed to recall and/or offer an adequate repair for the Second Row Seatbelt System Defect, and neither offered its customers suitable repairs or replacements free of charge nor offered to reimburse customers that have incurred out-of-pocket expenses to repair the defect.

17. As a result of Ford's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. Ford conducted these unfair and deceptive trade practices in a manner giving rise to substantial aggravating circumstances.

18. Had Plaintiff and other Class Members known of the defect at the time of purchase, they would not have bought the Class Vehicles, or would have paid substantially less for them.

19. As a result of the defect and the monetary costs associated with attempting to repair the defect, Plaintiff and the Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Ford's actions.

## II JURISDICTION

20. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

21. This Court has specific personal jurisdiction over Ford because Ford has its headquarters and principal place of business in this District at 1 American Road, Dearborn, MI 48126.

22. Ford has purposefully availed itself of the benefits and protections of this District by conducting continuous and systematic substantial business in this District,

directing advertising and marketing materials to this District, and intentionally and purposefully placing Class Vehicles into the stream of commerce within this District and throughout the United States with the expectation and intent that they would be purchased by consumers.

## III VENUE

23. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Ford resides in this District at 1 American Road, Dearborn, MI 48126, and Ford is subject to jurisdiction in this District. Additionally, a substantial part of the events and/or omissions giving rise to the claims occurred within this District, including wrongful acts and omissions on Ford's part.

## IV PARTIES

### A. Plaintiff Jeffrey Terrell (New York)

24. Plaintiff Jeffrey Terrell ("Plaintiff"), an adult male, is a resident of Flushing-Queens, New York. In 2022, Plaintiff purchased a certified pre-owned 2017 Ford Explorer XLT from Ford of Queens New York, a certified Ford dealership. Neither Ford, nor any of its agents, dealers, or other representatives warned Plaintiff about the Second Row Seatbelt Defect's existence prior to, or any time after, his purchase.

25. Prior to purchasing the vehicle, Plaintiff reviewed the sticker that was previously placed on the vehicle's window. The window sticker advertised the vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the vehicle. The window sticker did not state that the vehicle suffered from any defects.

26. Prior to purchasing the vehicle, Plaintiff spoke with salespeople at Ford of Queens New York who made representations about the vehicle, but they did not disclose the Second Row Seatbelt Defect prior to selling Plaintiff the vehicle.

27. Plaintiff still owns and uses the vehicle for personal, family and/or household uses.

28. Plaintiff experienced the manifestation of the Second Row Seatbelt Defect when the second row inflatable seatbelts did not buckle/latch properly.

29. In addition, Plaintiff specifically noticed that when his elderly mother sits in the backseat, he has problems with the seatbelt releasing. He also has to help her unlock the belt, and at times the latching mechanism sticks.

30. Plaintiff has presented his vehicle for repairs at Ford dealerships but has not been advised of the Second Row Seatbelt Defect, and to his knowledge, the defect has not been repaired by Ford.

**B. Plaintiff Mona Mayfield (California)**

31. Plaintiff Mona Mayfield ("Plaintiff"), an adult female, is a resident of Lemoore, California. In September 2012, Plaintiff purchased a new 2013 Ford Explorer from Future Ford of Clovis in Clovis, California, a certified Ford dealership. Neither Ford, nor any of its agents, dealers, or other representatives warned Plaintiff about the Second Row Seatbelt Defect's existence prior to, or any time after, the purchase.

32. Prior to purchasing the vehicle, Plaintiff reviewed the sticker that was previously placed on the vehicle's window. The window sticker advertised the vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the vehicle. The window sticker did not state that the vehicle suffered from any defects.

33. Prior to purchasing the vehicle, Plaintiff reviewed online advertising about the vehicle, which did not warn about the Second Row Seatbelt Defect.

34. Prior to purchasing the vehicle, Plaintiff spoke with salespeople at Future Ford of Clovis who made representations about the vehicle, but did not disclose the Second Row Seatbelt Defect prior to selling Plaintiff the vehicle.

35. Plaintiff still owns and uses the vehicle for personal, family and/or household uses.

36. Plaintiff experienced the manifestation of the Second Row Seatbelt Defect when the second row inflatable seatbelts did not buckle/latch properly.

37. Plaintiff has presented her vehicle for repairs at Ford dealerships but has not been advised of the Second Row Seatbelt Defect, and to her knowledge, the defect has not been repaired by Ford.

**C. Plaintiff David Rezabek (Illinois)**

38. Plaintiff David Rezabek ("Plaintiff"), an adult male, is a resident of Morris, Illinois. In May 2016, Plaintiff purchased a new 2016 Ford Explorer from the Ford dealership in Gardner, Illinois, a certified Ford dealership, which is now closed. Neither Ford, nor any of its agents, dealers, or other representatives warned Plaintiff about the Second Row Seatbelt Defect's existence prior to, or any time after, his purchase.

39. Prior to purchasing the vehicle, Plaintiff reviewed the sticker placed on the vehicle's window. The window sticker advertised the vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the vehicle. The window sticker did not state that the vehicle suffered from any defects.

40. Prior to purchasing the vehicle, Plaintiff reviewed online advertising about the vehicle, which did not warn about the Second Row Seatbelt Defect.

41. Prior to purchasing the vehicle, Plaintiff spoke with salespeople at the Ford dealership in Gardner, Illinois who made representations about the vehicle, but they did not disclose the Second Row Seatbelt Defect prior to selling Plaintiff the vehicle.

42. Plaintiff still owns and uses the vehicle for personal, family and/or household uses.

43. Plaintiff experienced the manifestation of the Second Row Seatbelt Defect when the second row inflatable seatbelts did not buckle/latch properly.

44. Plaintiff has presented his vehicle for repairs at Ford dealerships but has not been advised of the Second Row Seatbelt Defect, and to his knowledge, the defect has not been repaired by Ford.

**D. Plaintiff Frank Beven (Michigan)**

45. Plaintiff Frank Beven ("Plaintiff"), an adult male, is a resident of the Village of Clarkston, Michigan. In 2023, Plaintiff purchased a factory certified pre-owned 2017 Ford Explorer Platinum from Suburban Ford in Michigan, a certified Ford dealership. Neither Ford, nor any of its agents, dealers, or other representatives warned Plaintiff about the Second Row Seatbelt Defect's existence prior to, or any time after, his purchase.

46. Prior to purchasing the vehicle, Plaintiff reviewed the sticker that was previously placed on the vehicle's window. The window sticker advertised the vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the vehicle. The window sticker did not state that the vehicle suffered from any defects.

47. Prior to purchasing the vehicle, Plaintiff reviewed online advertising about the vehicle, which did not warn about the Second Row Seatbelt Defect.

48. Plaintiff still owns and uses the vehicle for personal, family and/or household uses.

49. Plaintiff experienced the manifestation of the Second Row Seatbelt Defect when the second row inflatable seatbelts did not buckle/latch properly.

50. Plaintiff has presented his vehicle for repairs at Ford dealerships but has not been advised of the Second Row Seatbelt Defect, and to his knowledge, the defect has not been repaired by Ford.

**E. Plaintiff Derek Cytryn (New Jersey)**

51. Plaintiff Derek Cytryn ("Plaintiff"), an adult male, is a resident of New Jersey. In September 2016, Plaintiff purchased a new 2017 Ford Explorer Platinum from

Larson Ford in Lakewood, New Jersey, a certified Ford dealership. Neither Ford, nor any of its agents, dealers, or other representatives warned Plaintiff about the Second Row Seatbelt Defect's existence prior to, or any time after, his purchase.

52. Prior to purchasing the vehicle, Plaintiff reviewed the sticker that was previously placed on the vehicle's window. The window sticker advertised the vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the vehicle. The window sticker did not state that the vehicle suffered from any defects.

53. Prior to purchasing the vehicle, Plaintiff spoke with salespeople at Larson Ford who made representations about the vehicle, but they did not disclose the Second Row Seatbelt Defect prior to selling Plaintiff the vehicle.

54. Plaintiff still owns and uses the vehicle for personal, family and/or household uses.

55. Plaintiff experienced the manifestation of the Second Row Seatbelt Defect when the second row inflatable seatbelts did not buckle/latch properly.

56. In addition, Plaintiff has specifically noticed that when the second row seats are folded down, or when someone sits in the second row seats with a seatbelt on, the airbag sensor warning light on the dashboard illuminates.

57. Plaintiff has presented his vehicle for repairs at Ford dealerships but has not been advised of the Second Row Seatbelt Defect, and to his knowledge, the defect has not been repaired by Ford.

**F. Plaintiff Jim Paone (New Jersey)**

58. Plaintiff Jim Paone ("Plaintiff"), an adult male, is a resident of New Jersey. On August 19, 2022, Plaintiff purchased a certified pre-owned 2018 Ford Explorer Sport from Quality Auto Mall in Rutherford, New Jersey, a certified Ford dealership. Neither Ford, nor any of its agents, dealers, or other representatives warned Plaintiff about the Second Row Seatbelt Defect's existence prior to, or any time after, his purchase.

59. Prior to purchasing the vehicle, Plaintiff reviewed the sticker placed on the vehicle's window. The window sticker advertised the vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the vehicle. The window sticker did not state that the vehicle suffered from any defects.

60. Prior to purchasing the vehicle, Plaintiff reviewed online advertising about the vehicle, which did not warn about the Second Row Seatbelt Defect.

61. Prior to purchasing the vehicle, Plaintiff spoke with salespeople at Quality Auto Mall who made representations about the vehicle, but they did not disclose the Second Row Seatbelt Defect prior to selling Plaintiff the vehicle.

62. Plaintiff still owns and uses the vehicle for personal, family and/or household uses.

63. Plaintiff experienced the manifestation of the Second Row Seatbelt Defect when the second row inflatable seatbelts did not buckle/latch properly.

64. In addition, Plaintiff has specifically noticed that it is hard to the latch the second row seatbelts and they don't attach until force is applied.

65. Plaintiff has presented his vehicle for repairs at Ford dealerships but has not been advised of the Second Row Seatbelt Defect, and to his knowledge, the defect has not been repaired by Ford.

**G. Plaintiff David Mockus (Pennsylvania)**

66. Plaintiff David Mockus ("Plaintiff"), an adult male, is a resident of Philadelphia, Pennsylvania. In 2012, Plaintiff purchased a new 2013 Ford Explorer XLT from Chapman Ford in Egg Harbor Township, Pennsylvania, a certified Ford dealership. Neither Ford, nor any of its agents, dealers, or other representatives warned Plaintiff about the Second Row Seatbelt Defect's existence prior to, or any time after, his purchase.

67. Prior to purchasing the vehicle, Plaintiff reviewed the sticker that was previously placed on the vehicle's window. The window sticker advertised the vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the vehicle. The window sticker did not state that the vehicle suffered from any defects.

68. Prior to purchasing the vehicle, Plaintiff reviewed online advertising about the vehicle, which did not warn about the Second Row Seatbelt Defect.

69. Prior to purchasing the vehicle, Plaintiff spoke with salespeople at Chapman Ford who made representations about the vehicle, but they did not disclose the Second Row Seatbelt Defect prior to selling Plaintiff the vehicle.

70. Plaintiff still owns and uses the vehicle for personal, family and/or household uses.

71. Plaintiff experienced the manifestation of the Second Row Seatbelt Defect when the second row inflatable seatbelts did not buckle/latch properly.

72. In addition, Plaintiff has specifically noticed that the second row seatbelts do not always latch, or they come undone, especially when using a baby seat.

73. Plaintiff has presented his vehicle for repairs at Ford dealerships but has not been advised of the Second Row Seatbelt Defect, and to his knowledge, the defect has not been repaired by Ford.

**H. Plaintiff Kevin Kaintz (Pennsylvania)**

74. Plaintiff Kevin Kaintz ("Plaintiff"), an adult male, is a resident of Pennsylvania. In 2022, Plaintiff purchased a certified pre-owned 2013 Ford Explorer from Keyser Miller Ford in Collegeville, Pennsylvania, a certified Ford dealership. Neither Ford, nor any of its agents, dealers, or other representatives warned Plaintiff about the Second Row Seatbelt Defect's existence prior to, or any time after, his purchase.

75. Prior to purchasing the vehicle, Plaintiff reviewed the sticker that was previously placed on the vehicle's window. The window sticker advertised the vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the vehicle. The window sticker did not state that the vehicle suffered from any defects.

76. Prior to purchasing the vehicle, Plaintiff reviewed online advertising about the vehicle, which did not warn about the Second Row Seatbelt Defect.

77. Prior to purchasing the vehicle, Plaintiff spoke with salespeople at Keyser Miller Ford, who made representations about the vehicle, but they did not disclose the Second Row Seatbelt Defect prior to selling Plaintiff the vehicle.

78. Plaintiff still owns and uses the vehicle for personal, family and/or household uses.

79. Plaintiff experienced the manifestation of the Second Row Seatbelt Defect when the second row inflatable seatbelts did not buckle/latch properly.

80. In addition, Plaintiff has specifically noticed that casing on the latch of the second row seatbelt on the passenger side has broken.

81. Plaintiff has presented his vehicle for repairs at Ford dealerships but has not been advised of the Second Row Seatbelt Defect, and to his knowledge, the defect has not been repaired by Ford.

**I. Defendant Ford Motor Company**

82. Defendant Ford Motor Company ("Ford") is a corporation doing business in all 50 states and the District of Columbia and is organized under the laws of the State of Delaware, with its principal place of business in the State of Michigan at 1 American Road, Dearborn, MI 48126.

83. At all times relevant to this action, Ford manufactured, sold, and warranted the Class Vehicles throughout the United States. Ford and/or its agents, divisions, or

subsidiaries designed, manufactured, and installed the Second Row Seat Belt system on the Class Vehicles.

## V FACTUAL ALLEGATIONS

### A. The Class Vehicles Suffer from the Second Row Seatbelt Defect

84. Ford has offered the Ford Explorer to consumers in the United States since 1991. The Ford Explorer is a sport utility vehicle (or SUV) that has been redesigned for six successive generations. This lawsuit addresses the fifth generation Ford Explorer sold by the company between 2011-2019.

85. Seatbelts have been mandated in vehicles by federal law since January 1968, although for many years, seatbelt use was voluntary. New York became the first state to require vehicle occupants to wear seatbelts in 1984. Since that time, almost all states have enacted laws requiring adults to wear a seatbelt in a vehicle.

86. A three-point seat belt system generally includes webbing, a buckle, a retractor, and an anchor. The webbing is the fabric strap that crosses the body and ultimately keeps it in place if the automobile experiences sudden contact or stoppage. The buckle is where the webbing is secured by means of a connecting and locking mechanism. The retractor is a mechanism controlling the webbing's length. When it is working properly, the retractor permits the seat belt's wearer a certain amount of movement and flexibility in the seat. Upon contact or sudden stoppage, however, the retractor locks in place and keeps the driver from unwarranted, unsafe movements. Finally, the anchor is where the seat belt is attached to the vehicle.

87. The 2011-2019 Ford Explorer added "inflatable seatbelts" in the second row outboard seats. Inflatable seat belts have two layers of outer material with an airbag system sandwiched between them. This makes them slightly thicker than regular seat belts. They also have a unique, solid metal buckle. Ford's inflatable belt system is that it is not a continuous loop like most lap-and-shoulder belts. Instead, there are separate lap and shoulder belts attached to a specially designed latch plate (the piece that pushes into the buckle). The shoulder belt and the lap belt each have their own retractor system.

88. The second row seatbelt system in 2011-2019 Ford Explorer vehicles has been the subject of multiple complaints on the National Highway Traffic Safety Administration's Consumer Complaint Database. This publicly available database contains all motor vehicle-related consumer complaints submitted to NHTSA since January 2000. Consumers submit what is called a "Vehicle Owner Questionnaire" in which they asked to provide information that includes, the make, model, and model year of the vehicle, the approximate incident date, the mileage at which the incident occurred, whether the incident involved a crash or a fire, whether any persons were injured or killed in the incident, the speed of the vehicle at the time of the incident, and a description of the incident along with a description of the vehicle components they believe were involved in the incident. The majority of consumer complaints are submitted online at www.safercar.gov where consumers can input this information directly into the database through their computer. They can also submit complaints by telephone through the Auto Safety Hotline, through submitting a paper Vehicle Owner Questionnaire form, and by submitting consumer letters to NHTSA by mail. This information is then entered into NHTSA's ARTEMIS database where it can be searched and reviewed by the general public and vehicle manufacturers alike, by make, model, model year, and component. This database is promoted by NHTSA as a valuable consumer information tool.

89. Hundreds of these complaints have been reported to NHTSA from 2011 to the present. Below are examples of some of these complaints, verbatim and in chronological order:

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 1/21/2012 | 2012 | TL* THE CONTACT OWNS A 2012 FORD EXPLORER. THE CONTACT STATED THAT THE REAR PASSENGER SIDE SEAT BELT WOULD NOT RETRACT. THE VEHICLE WAS TAKEN TO AN AUTHORIZED DEALER AND THE REPLACEMENT SEAT BELT WAS ALSO EXPERIENCING THE SAME FAILURE. THE CONTACT WAS INFORMED THAT |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | THE SEAT BELTS WERE BEING REDESIGNED AND THE VEHICLE WAS AWAITING NEW PARTS FOR REPAIR. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 3,112 UPDATED 02/27/12*LJ THE CONSUMER STATED THE REPLACEMENT SEAT BELT ALSO FAILED. UPDATED 02/28/12 |
| 9/16/2012 | 2013 | TL* THE CONTACT OWNS A 2013 FORD EXPLORER. THE CONTACT STATED THAT THE REAR SECOND ROW PASSENGER SIDE SEAT BELT FAILED TO UN-LATCH WHEN OCCUPIED. THE CONTACT MENTIONED THAT THE FAILURE OCCURRED WHENEVER THE OTHER TWO REAR SEATS WERE NOT IN A FULLY RECLINED POSITION. THE DOWNWARD POSITIONING OF THE TWO SEATS COVERED THE SEAT BELT RELEASE BUTTON. THE VEHICLE WAS TAKEN TO A DEALER WHO WAS UNABLE TO PROVIDE ASSISTANCE. THE MANUFACTURER WAS NOTIFIED OF THE PROBLEM. THE APPROXIMATE FAILURE MILEAGE WAS 1,200. UPDATED 10/26/12 *CN |
| 5/3/2013 | 2013 | THE BUCKLE FOR BOTH INFLATABLE SEATBELTS IN THE SECOND ROW SEAT HAVE BROKEN A TOTAL OF 4 TIMES. ONCE THE BUCKLE CRUMBLED INTO MANY PIECES IN MY DAUGHTER'S HAND, ON BOTH BELTS A PROTECTIVE PLASTIC COVER HAS FALLEN OFF, AND NOW ONE OF THE BELTS GETS STUCK OCCASIONALLY IN THE BUCKLE. ALSO THE MIDDLE BELT LOCKED UP AND WOULD NOT UNROLL. SO A TOTAL OF 5 ISSUES WITH ONE ROW OF BELTS AND BUCKLES. THIS IS THE ROW MY CHILDREN SIT IN. I REQUESTED FORD TO TAKE THIS VEHICLE BACK UNDER THE CALIFORNIA LEMON LAW AND THEY DENIED IT! *TR |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 9/10/2013 | 2011 | A SEAT BELT/AIR BAG WARNING LIGHT HAS BEEN COMING ON INTERMITTENTLY. I WAS TOLD THAT THE SERVICE DEALERS COULD ONLY INVESTIGATE THIS WHEN THE LIGHT WAS ON. AS IT COMES AND GOES, I HAVE NOT BEEN ABLE TO TAKE THE VEHICLE INTO THE DEALER FOR A COUPLE OF MONTHS. WHEN I DID, I WAS TOLD THAT IT WAS NO LONGER IN WARRANTY AND I WOULD BE CHARGED ABOUT $450. THE REPRESENTATIVE SAID IF I DID NOT GET IS CORRECTED THAT THE AIR BAG WOULD NOT WORK PROPERLY THEREBY EXPOSING ME TO RISK. IT SEEMS THAT A SITUATION SUCH AS THIS SHOULD BE COVERED BY THE MANUFACTURER INDEFINITELY OR ARE THEY WILLING TO TAKE THE CHANCE THAT THEIR CUSTOMERS WILL NOT BE INJURED FOR AN ERROR ON THEIR PART IN MANUFACTURE. I HAD THE DEFECT REPAIRED AT MY EXPENSE BUT WOULD LIKE TO HAVE AN INVESTIGATION OPENED AND POSSIBLE CHARGES AGAINST FORD MOTOR COMPANY AND POSSIBLY EVEN THEIR DEALERSHIP NETWORK. |
| 4/22/2014 | 2014 | COMPLAINT SUMMARY: SECOND ROW INFLATABLE SEAT BELT STUCK IN OUT POSITION. WILL NOT RETRACT. WILL NOT PULL FORWARD. CONCERN THAT THIS IS A MATERIAL FLAW - SEAT BELT IS TOO THICK AND TOO PLIABLE. DOUBLES OVER IN THE RETRACTOR AND BECOMES NON OPERATIONAL. MAJOR RISK OF INJURY AS THIS CAN HAPPEN WHILE THE SEAT BELT IS IN USE RENDERING THE SEAT BELT INOPERABLE. THIS HAPPENS UNBEKNOWNST TO THE PASSENGER WHO WOULD NOT NOTE THE INOPERABILITY OF THE SEAT BELT AS IT IS VISUALLY BEHIND THE PASSENGER AND NOT IN SIGHT LINE. VEHICLE |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | MANUFACTURED IN CHICAGO....UPDATED08-28-14 *BF UPDATED 11/12/2014 *JS |
| 11/12/2014 | 2012 | TL* THE CONTACT OWNS A 2012 FORD EXPLORER. THE CONTACT STATED THAT THE AIR BAG LIGHT ILLUMINATED. THE DEALER STATED THAT THE FAILURE WAS REFERENCED IN SERVICE BULLETIN NUMBER: 10044523. THE FAILURE ALSO PRODUCED AN AIR TENSIONER CODE, WHICH COULD PREVENT THE AIR BAG TENSIONER FROM TIGHTENING OR THE AIR BAGS FROM DEPLOYING. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE APPROXIMATE FAILURE MILEAGE WAS 36,000. |
| 4/6/2015 | 2011 | VEHICLE SRS WARNING LIGHT ILLUMINATED AND EXTINGUISHED SPORADICALLY FOR SEVERAL DAYS BEFORE STAYING ILLUMINATED PERMANENTLY. THE DIAGNOSTIC CODES INDICATE FAILURE OF THE SUPPLEMENTAL RESTRAINT SYSTEM. TROUBLESHOOTING, RESEARCH, AND DIAGNOSTICS HAVE REVEALED POOR ELECTRICAL CONNECTIONS AT VARIOUS CONNECTORS THROUGHOUT THE VEHICLE FOR THE SRS SYSTEM. DEALER SERVICE HAS INDICATED POTENTIAL FAILURE OF THE ENTIRE SAFETY SYSTEM TO PERFORM ITS FUNCTION (PRE-TENSIONERS, AIRBAG DEPLOYMENT, ETC) IF THIS LIGHT IS ILLUMINATED. |

| DATE | MODEL YEAR | DESCRIPTION |
| --- | --- | --- |
| 4/26/2015 | 2015 | ON THE SEAT BELTS THE MIDDLE ROLE BUCKET SEATS ARE BOTH TEARING WHERE THE AIR BAG IS IN THEM AND THEY ARE ALSO HARD TO LATCH SO THE SEAT BELT CAN'T COME UNDONE UNLESS YOU PUSH THE RED BUTTON. ON THE 'OTHER COMPLAINT' MY HUSBAND AND MY 6 YEAR OLD DAUGHTER HAVE BEEN GETTING HEADACHES EVERY SINCE WE BOUGHT THE CAR NEW AND MY DAUGHTER GETS NAUSEATED AND SHE PASSES OUT ASLEEP IN THE CAR BUT IT NEVER CROSSED MY MIND ABOUT MY CAR POSSIBLY LEAKING CARBON MONOXIDE INSIDE MY CAR UNTIL THE OTHER DAY WHEN A FRIEND MADE THE COMMENT TO ME ABOUT S RECALL FOR THAT ON MY VEHICLE MAKES MODELS AND YEAR. I'M VERY WORRIED ABOUT THIS AND IF MY CAR IS LEAKING CARBON MONOXIDE MY 6 YEAR OLD DAUGHTER HAS BEEN BREATHING IT SINCE APRIL OF 2015 WHEN WE BOUGHT IT BRAND NEW AS I HAVE BEEN AND MY 4 YEAR OLD SON AND MY HUSBAND (WHICH HE DOESN'T RIDE/DRIVE IN MY CAR MUCH AT ALL). I TOOK MY CAR THE THE DEALER SO THAT IT CAN BE CHECKED OUT IN SERVICE. WHAT DO I NEED TO DO NOW? |
| 11/6/2015 | 2015 | THE CONTACT OWNS A 2015 FORD EXPLORER. THE CONTACT STATED THAT THE AIR BAG WARNING LIGHT WAS ILLUMINATED ON THE INSTRUMENT PANEL. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DISCOVERED THAT THE CAUSE OF THE FAILURE WAS RELATED TO THE REAR MIDDLE ROW SEAT BELT ASSEMBLY. THE AIR BAG LIGHT WAS ILLUMINATED DUE TO THE SEAT BELT ASSEMBLY FAULTY WIRING. THE DEFECT WAS INITIALLY REPAIRED UNDER WARRANTY; HOWEVER, THE FAILURE PERSISTED, AND THE WARRANTY EXPIRED. THE MANUFACTURER WAS |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | NOTIFIED OF THE FAILURE AND INFORMED THE CONTACT OF A CUSTOMER SATISFACTION PROGRAM RELATED TO THE FAILURE; HOWEVER, THE VEHICLE WAS NOT INCLUDED IN THE PROGRAM. THE CONTACT WAS THEN GIVEN A CASE NUMBER. THE VEHICLE HAD YET TO BE REPAIRED. THE FAILURE MILEAGE WAS 13,681. |
| 12/24/2015 | 2016 | TL* THE CONTACT OWNS A 2016 FORD EXPLORER. WHILE THE VEHICLE WAS PARKED, THE CONTACT NOTICED THAT THE SEAT BELT LATCH FRACTURED. AS A RESULT THE CONTACT WAS UNABLE TO BUCKLE THE SEAT BELT. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THE SEAT BELT HOUSING NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 5,208. |
| 7/16/2016 | 2015 | MY SON WAS SITTING IN THE BACK LEFT SEAT AND HE GOT STRANGLED INTO THE MIDDLE SEAT BELT. IT LOCKED AND WOULD NOT RELEASE MAKING THE STRANGULATION MORE TIGHT. I THEN HAD TO CUT THE BELT. THIS IS A HUGE SAFETY ISSUE. WE WERE STATIONARY IN THE DRIVEWAY , LUCKILY I WAS STILL HOME AND WAS ABLE TO CUT THE BELT. IF I WAS NOT, I WOULD HAVE HAD TO CALL 911. |
| 8/3/2016 | 2014 | WHEN DRIVING THE 2014 EXPLORER, COKING OVER A HILL AND BEGAN BRAKING. CAR LOST BRAKING CAPABILITY AND BEGAN TO SPEED DOWN THE HILL, AND CRASHED INTO A TREE. ONE MIDDLE OCCUPANT ON 2ND ROW CAME UNBUCKLED AND DIDN'T SURVIVE. THIS HAS BEEN AN ONGOING TRIAL FOR 3 YEARS AND RECENTLY INFORMED THAT NO INVESTIGATION |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | HAS BEEN PERFORMED ON THE VEHICLE OTHER THAN THE EDR/CDR. NO POST VEHICLE INSPECTION HAS BEEN PERFORMED, NO MEDICAL REPORTS HAVE BEEN PULLED. I HAVE PREVIOUSLY FOR 3 YEARS INQUIRED FOR HELP ON THIS MATTER AND HAVE FORWARDED QUESTIONS REGARDING INFORMATION OBTAINED. I KNOW WITHOUT A SHADOW OF A DOUBT I AM NOT LIABLE FOR THIS ACCIDENT AND HAVE WORKED FOR 3 YEARS TRYING TO OBTAIN INFORMATION ON THIS VEHICLE. WHEN I WAS COMING DOWN THE HILL THE CAR SEEM TO BE INCREASED IN SPEED - THE REPORT DOES SHOW THAT FOOT WAS ON THE BRAKE THE ENTIRE REPORT AND NO GAS WAS APPLIED. I TURNED AS FAR AS I COULD WITH THE WHEEL AND THE STEERING BARELY STEERED AS WELL. I WOULD LIKE TO SAVE A LIFE SOMEWHERE DOWN THE LINE AS THIS HAS CHANGED MY LIFE FOREVER. THE OCCUPANT ON THE 2ND ROW PASSED AWAY THAT DAY FROM SEAT BELT COMING UNATTACHED. MEDICAL REPORTS SHOW HE WAS WEARING A SEATBELT. IF THERE WAS SOMEONE WILLING TO LOOK INTO THIS - WOULD BE A LIFE CHANGING SITUATION. |
| 10/29/2016 | 2017 | REAR SEAT BELT DOES NOT FASTEN PROPERLY WHEN A COSMETIC DOOR BECOMES JAMMED IN THE MECHANISM. SEAT BELT WAS RENDERED UNUSABLE AND COULD EFFECT PASSENGER AND DRIVER SIDE REAR SEATS. DESIGN FLAW EXPECTED, NO ABUSE TO COMPONENTS AND BRAND NEW VEHICLE. IT DOES NOT MATTER IF THE VEHICLE WAS MOVING OR NOT- THE SEATBELTS FAILED TO WORK (FASTEN). IN THE ATTACHED PICTURES YOU CAN SEE MY FINGER PUSHING ON THE DOOR THAT BECAME JAMMED- IN THE OTHER PICTURE YOU CAN SEE THE DOOR |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | WAS REMOVED BY THE DEALER AFTER IT FAILED (CAUSING THE SEATBELT TO NO LONGER FUNCTION). |
| 12/1/2016 | 2015 | THE AIRBAG WARNING LIGHT HAS BEEN ILLUMINATING INTERMITTENTLY OVER THE LAST YEAR OR SO. I TOOK MY VEHICLE TO KEN GRODY FORD ON SEPTEMBER 26, 2017 AND ASKED THEM TO LOOK AT IT BUT WAS TOLD THAT THEY COULDN'T FIND ANYTHING WRONG. THE LIGHT NOW IS ON ALL OF THE TIME. I RAN A VEHICLE HEALTH REPORT AND IT INDICATED "RESTRAINTS & DRIVER ASSISTANCE - URGENT SERVICE REQUIRED! - INDICATES AN ISSUE WITH THE SUPPLEMENTARY RESTRAINT SYSTEM WHICH INCLUDES THE AIR BAGS AND SEAT BELT BUCKLE PRETENSIONERS" |
| 4/1/2017 | 2017 | TL* THE CONTACT OWNS A 2017 FORD EXPLORER. THE CONTACT STATED THAT IT TOOK TOO LONG TO UNLATCH THE SEAT BELTS. THE VEHICLE WAS TAKEN TO REDLANDS FORD INC (1121 COLTON AVE, REDLANDS, CA, 92374) WHERE IT WAS STATED THAT THE MANUFACTURER WOULD BE MADE AWARE OF THE FAILURE. THE CONTACT DID NOT RECEIVE A RESPONSE FROM THE MANUFACTURER NOR THE DEALER. THE CONTACT MADE THE MANUFACTURER AWARE OF THE FAILURE AND WAS ADVISED TO TAKE THE VEHICLE TO FAIRVIEW FORD (292N G STREET, SAN BERNARDINO, CA 92410) WHERE THE TECHNICIAN STATED THAT THERE WAS NO RECALL. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 400. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 5/5/2017 | 2017 | WE HAVE NEW AIRBAG TYPE REAR SEATBELTS, AND IT IS ABSOLUTELY ALMOST IMPOSSIBLE TO BUCKLE THE PASSENGERS IN AS LONG AS WE HAVE A CHILD SEAT IN THE MIDDLE, WE ALWAYS HAVE A CHILD SEAT IN THE MIDDLE, LEFT PASSENGER CANNOT BUCKLE THEMSELVES IN,. I'VE BEEN TO 2 DEALERS AND CALLED FORD TWICE AND NO ONE WILL PURSUE FIXING THE PROBLEM, THIS IS A VERY STRESS FULL KNOWING ITS A 2017 AND WE CANNOT USE THIS AS A FAMILY CAR |
| 7/14/2017 | 2012 | THIS IS A SAFETY ISSUE - AIR BAGS COULD MALFUNCTION AT ANYTIME DUE TO MISCOMMUNICATION WITHIN THE SYSTEM. AIR BAGS CAN DEPLOY AT ANYTIME OR CAN FAIL TO DEPLOY WHEN NECESSARY. AIR BAG LIGHT TURNS ON AND STAYS ON. ACCORDING TO FORD DEALER THIS IS A KNOWN ISSUE BUT HAS NOT YET BEEN RECALLED. SEAT BELT BUCKLE REPLACED, AIR BAG DIAGNOSTIC MODULE REPLACED, PROGRAM CONTROL MODULE AIR BAG REPROGRAMED. LIGHT CONTINUES TO TURN ON. HAS A WIRE HARNESS ISSUE L/F DOOR MODULE SRS - WIRING LOOM NEEDS TO BE REPLACED. |
| 7/25/2017 | 2011 | RESTRAINTS INDICATOR LAMP WARNING LIGHT CAME ON AND WON'T GO OFF. I HAVE AN APPOINTMENT SETUP THIS FRIDAY WITH MY LOCAL FORD DEALERSHIP TO HAVE IT CHECKED OUT, BUT WHEN I RESEARCHED THE ISSUE, I FOUND THAT A TON OF PEOPLE HAD THE SAME PROBLEM. A MAJORITY WERE RESOLVED BY FIXING A CONNECTION UNDER THE DRIVER SEAT. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 10/2/2017 | 2015 | AIRBAG RESTRAINT SYSTEM WARNING LIGHT STAYS ON ALL THE TIME. FORD SHOULD BE AWARE OF THIS PROBLEMS DUE TO COMPLAINTS LISTED ON SEVERAL WEBSITES AND SERVICE VISITS. PROBLEMS WITH THE INFLATABLE SEAT BELT CONNECTERS AND AIRBAG CONNECTERS. THIS CAUSES THE SAFETY RESTRAINT SYSTEM MALFUNCTION. |
| 10/7/2017 | 2015 | AIRBAG LIGHT HAS COME ON FOR THE SECOND TIME. THE VEHICLE IS CURRENTLY AT APPROXI MATELY 62,000 MILES. THE PREVIOUS TIME THE AIRBAG CAME ON WAS FOR DEFECTIVE SEATBELTS WITH THE AIRBAGS IN PASSENGER COMPARTMENT. ALSO, A SMELL OF SULFUR IS COMING FROM THE AIR VENTS WHEN THE AIR CONDITIONING IS ON. THE SMELL IS STRONGEST WHEN THE CAR IS STATIONARY. WHEN THE CAR IS TRAVELING AT HIGHWAY SPEEDS WITHOUT A/C ON, THERE IS NO ODOR. |
| 11/18/2017 | 2014 | BOUGHT USED, WHEN I GOT IT WITH ONLY 54000 MILES, ONE SEAT BELT WOULD GO INTO THE RECEIVER BUT NOT CLIP IN OR STAY IN. A WEEK AFTER I BOUGHT IT THE SEAT BELT ON THE OTHER BUCKET SEAT ALL OF A SUDDEN JAMMED AND THE SEAT BELT WILL NOT GO IN AT ALL... COULD HAVE BEEN VERY DANGEROUS IF THEY HAD FAILED WHILE DRIVING. |
| 3/1/2018 | 2014 | AIRBAG LIGHT KEEPS COMING ON DUE TO FAULTY WIRING , COSTS 600 TO REPAIR . THIS IS SECOND FORD CAR WITH THIS SAME ISSUE. I WAS TOLD PROBLEM WAS IN BACK SEATS. NO ONE EVER USES BACK SEATS. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 3/17/2018 | 2016 | TAKATA RECALL I HAVE A 2016 FORD EXPLORER PLATINUM I HAVE IDENTICAL TWIN BOYS SO THE SAFEST PLACE FOR THEM IS IN THE MIDDLE SEAT THEIR CAR SEATS ARE FACING FORWARD NOW BECAUSE THEY'RE OVER TWO YEARS OLD THE SEAT BELT GOES UNDERNEATH THE CAR SEAT AND BUCKLES IN IT'S A BRITEX SNAPTIGHT CARSEATS THE SEATBELTS HAVE AIRBAGS ON THEM I HIGHWAY PATROL HAD NEVER SEEN THIS TYPE OF SITUATION BEFORE AND INFORMED ME THAT THIS IS VERY DANGEROUS BECAUSE IF THOSE SEAT BELTS WERE TO BE SET OFF THEY WOULD INFLATE UNDERNEATH THE CAR SEAT AND CAN HURT MY CHILDREN THERE'S NOTHING IN THE FORD HANDBOOK THAT SAYS YOU CAN'T HAVE CAR SEATS IN THIS VEHICLE BUT TWINS I HAVE TO HAVE ONE ON EACH SIDE I CAN'T PUT THEM BOTH IN THE MIDDLE IN BETWEEN THE DRIVERS IN THE PASSENGER SEAT IN THE MIDDLE ROW THERE'S NOWHERE ELSE TO PUT THEM AND THE HIGHWAY PATROL INFORMED ME TO CONTACT YOU BECAUSE THIS IS VERY UNSAFE AND CAN HURT OR POSSIBLY KILL MY CHILDREN IF I WAS TO GET IN AN ACCIDENT AND THOSE SEATBELT AIRBAGS WERE TO GO OFF. NOTHING HAS HAPPENED YET NO ACCIDENTS I WAS DOING A SAFETY CHECK AT VALLEY CHILDREN'S HOSPITAL IN FRESNO AND THEY WERE EDUCATING US ON HOW TO INSERT CAR SEATS AND WHERE TO PUT THEM IN THE CAR SO THAT THEY'RE THE SAFEST WHEN THEY CAME ACROSS THE AIRBAGS ON THE SEAT BELTS AND SAID CONTACT FORD I WENT TO FORD RIGHT AWAY I PAID $43,000 FOR MY VEHICLE AND LITHIA FORD IN FRESNO CALIFORNIA DID NOT WANT TO HELP ME THEY SAID LIABILITY THEY CAN'T TAKE THE SEAT BELT OUT AND PUT JUST REGULAR ONES IN |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | DUE TO LIABILITY AND THE HIGHWAY PATROL SAID I CANNOT KEEP MY CHILDREN IN MY VEHICLE I NEED YOUR GUYS HELP I CAN'T AFFORD TO GO BUY ANOTHER BRAND NEW VEHICLE AND THE HIGHWAY PATROL HELPED ME LOOK THROUGH THE FORD OWNER'S MANUAL AND THERE'S NOTHING THAT SAYS YOU CAN'T HAVE CAR SEATS IN THERE I NEED YOUR HELP ON TO WHAT I CAN DO TO HAVE A VEHICLE FOR MY TWO BOYS THAT IS ABSOLUTE SAFEST |
| 5/4/2018 | 2014 | EXHIBITS AN AIR BAG WARNING LIGHT DUE TO HIGH RESISTANCE BETWEEN RCM AND SECOND ROW INFLATABLE SEAT BELT CIRCUIT |
| 6/1/2018 | 2012 | SEAT BELT PRETENSIONER. AIR BAG LIGHT ON AND OFF AT RANDOM WHILE DRIVING. NOT COVERED UNDER WARRANTY. |
| 8/30/2018 | 2018 | I RECENTLY PURCHASED A 2018 FORD EXPLORER ON AUGUST 30 FROM HAMMONASSET FORD IN MADISON, CT. I PAID SEVERAL THOUSAND DOLLARS EXTRA FOR A SAFETY PACKAGE WHICH INCLUDES REAR SEAT BELT AIRBAGS. WE WERE DISAPPOINTED TO DISCOVER AN ISSUE IN THE SECOND ROW OF SEATS THAT HINDERS US FROM USING ONE OF THE SEATS BECAUSE OF THE AIRBAG CONFIGURATION. THE MIDDLE SEAT WHERE THERE ARE SEAT BELTS FOR THREE ONLY FITS TWO PEOPLE. THE DESIGN OF THE SEAT BELT LATCHES IS A FLAWED ONE. THE SEAT BELTS OVERLAP WHICH IS A SAFETY CONCERN NOT TO MENTION A HUMAN BODY CANNOT FIT IN THE SPACE THEY ALLOTTED. THIS CAR IS ADVERTISED FOR SEVEN PEOPLE BUT ONLY CAN SEAT SIX. I HAVE SEVEN PEOPLE IN MY FAMILY INCLUDING A BABY IN A CAR SEAT AND WE ALL CAN'T GO IN THE CAR TOGETHER AT THE SAME TIME BECAUSE |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | OF IT. I REACHED OUT TO THE DEALERSHIP AS SOON AS WE GOT THE CAR HOME AND THEY TOLD ME TO GO TO FORD. THE PERSON I TALKLED TO TOLD ME NO NEED TO TALK TO THE OWNER OR BOTHER HER. THEY WOULD NOT HELP ME BECAUSE THEY SAID IT IS A DESIGN ISSUE NOT ANYTHING THEY CAN REPAIR. I REACHED OUT TO FORD WHO SAID THE SAME THING. I CONTINUED TO REACH OUT TO THE DEALERSHIP WHO HAD SERVICE REACH OUT TO FORD TO SEE IF THEY CAN CHANGE THE SEAT BELTS IN THE CAR BUT DUE TO SAFETY ISSUES THEY WERE TOLD THEY CANNOT AND AGAIN THEY SAID IT IS A DESIGN ISSUE NOT A MANUFACTURING ISSUE THEREFORE I SHOULD GO TO THE BBB.IN ADDITION TO HAMMONASSET FORD, I ALSO WENT TO HOFFMAN FORD IN EAST HARTFORD TO SHOW THE SALES MANAGER THE CAR. HE WAS SHOCKED ABOUT THE DESIGN OF THIS CAR. WE LOOKED AT THE SAME EXACT CAR WITHOUT THE SAFETY PACKAGE AND THE SEAT BELTS WERE NOT FLAWED. THE SALES MANAGER AT HOFFMAN FORD SAID HE CANT HELP ME BECAUSE I DIDN'T BUY THE CAR THERE BUT IF FORD REACHED OUT TO HIM HE COULD HELP. I CONTACTED THE BBB BUT THEY DECLINED MY APPLICATION DUE FOR THE SAME REASON SAYING IT IS NOT AN MANUFACTURING ISSUE. |
| 10/1/2018 | 2015 | CAPTAINS CHAIR BEHIND THE DRIVER'S SEAT, SEATBELT WOULD NO LONGER CONNECT. SEATBELT RECEPTACLE HAD TO BE REPLACED, NOW AIRBAG LIGHT IS ON AT ALL TIMES. |
| 10/28/2018 | 2014 | AIR BAG WARNING LIGHT CAME ON. BROUGHT IN TO HERITAGE FORD MODESTO CA. WAS DIAGNOSED THAT THE WIRE HARNESSES FOR THE REAR DRIVER AND PASSENGER SEATS NEEDED TO |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | BE REPLACED. WAS INFORMED THAT IT IS NOT COVERED BY ANY FACTORY RECALL DESPITE BEING A COMMON DEFECT AND SAFETY ISSUE. MILEAGE AT TIME OF SERVICE 62,000 MILES. COST $565.00 |
| 11/4/2018 | 2014 | TL* THE CONTACT OWNS A 2014 FORD EXPLORER. WHILE DRIVING APPROXIMATELY 45 MPH, THE CONTACT'S VEHICLE SUDDENLY CRASHED INTO A SECOND VEHICLE. DURING THE CRASH, THE THIRD ROW SEAT BELTS MALFUNCTIONED AND CAUSED THE TWO CHILDREN SEATED IN THE THIRD ROW TO JERK FORWARD AND SLAM INTO THE BACK OF THE SECOND ROW SEATS. THE CONTACT INDICATED THAT THE CHILD SEATED ON THE REAR PASSENGER SIDE SEAT SUSTAINED LACERATIONS TO THE NOSE AND MOUTH AND THE CHILD SEATED ON THE REAR DRIVER SIDE SEAT SUSTAINED SEVERE LACERATIONS TO THE FOREHEAD. THE CHILDREN WERE BOTH TRANSPORTED BY AMBULANCE TO THE HOSPITAL. A POLICE REPORT WAS FILED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE MANUFACTURER AND LOCAL DEALER WERE NOT NOTIFIED. THE FAILURE MILEAGE WAS 45,000. |
| 11/26/2018 | 2016 | PLASTIC CASING IN SEAT BELT HOUSING FOR 2ND ROW CAPTAIN CHAIR BROKE AND SEAT BELT WILL NOT SNAP INTO HOUSING. NO ACCIDENTS OR MISUSE; 11 YR-OLD SON WENT TO BUCKLE SEAT BELT AND WAS UNABLE TO BUCKLE. PLASTIC CASING HAD FALLEN INTO SPACE WHERE BUCKLE UNIT HOUSED; WE REMOVED THE BROKEN PIECE WITH NEEDLE-NOSE PLIERS. OTHER 2ND ROW CAPTAIN CHAIR'S HOUSING IS NOT BROKEN. WE WERE IN KS FOR THE HOLIDAY AND RETURNING TO CO THAT DAY. SOONEST APPOINTMENT WITH DEALER WAS 12/6/18. CALLED |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | DEALER TO VERIFY THAT THE HOUSING REPLACEMENT HAD BEEN ORDERED, BUT IT HAD NOT BEEN DONE. HAD TO TALK TO SEVERAL 'SUPERVISORS' TO FINALLY GET PART ORDERED BEFORE APPOINTMENT, SO THAT IT COULD BE REPAIRED WITHOUT HAVING TO COME BACK A SECOND TIME. |
| 12/12/2018 | 2014 | AIRBAG LIGHT CAME ON WHEN I TURNED THE VEHICLE ON AND WOULD NOT GO OFF. TOOK INTO FORD TO BE DIAGNOSED, WAS TOLD IT IS THE REAR SEAT INFLATOR CONTROL. |
| 1/28/2019 | 2016 | I HAVE A 2016 EXPLORER WHICH HAS 2ND ROW AIRBAG SEATBELTS. WHEN PURCHASING MY CAR IT WAS EXPLAINED TO ME THAT REAR AIRBAG SEATBELTS WERE THE BEST SAFETY FEATURE FOR CHILDREN. I DID NOT HAVE CHILDREN AT THE TIME. I NOW HAVE A 2 YEAR OLD WHOM WILL BE EXCEEDING THE LATCH WEIGHT LIMIT SHORTLY. UPON ATTEMPTING TO INSTALL HIS CAR SEAT REAR FACING, IT BECAME APPARENT I AM UNABLE TO RUN AN AIRBAG SEAT BELT THROUGH MY CHILDS CAR SEAT. IT IS A EXTREME SAFETY HAZARD. I REQUESTED MY SEAT BELTS BE CHANGED OUT FOR REGULAR SEAT BELTS AND I WAS TOLD THIS COULD NOT BE DONE AS IT WOULD DEACTIVATE MY CARS AIRBAGS SYSTEM. PLEASE HELP ME FIND A SOLUTION AS I CANNOT PUT HIM IN THE CENTER SEAT. HIS CAR SEAT DOES NOT FIT BEING THE CENTER SEAT OF THE EXPLORER IS NOT A FULL-SIZED SEAT. I HAVE SPOKEN WITH FORD CORPORATE OFFICE, THE DEALERSHIP (OC WELCH FORD IN HARDEEVILLE, SC) AND HAVE GOTTEN LITTLE TO NO ASSISTANCE OTHER THAN THERE IS NOTHING THEY CAN DO BUT ASSIST ME IN FINDING A NEW CAR TO PURCHASE. THAT IS THE LAST THING I |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | WANT TO DO. I AM AT A LOSS AND ONLY WANT WHAT IS BEST FOR MY CHILD. I CANNOT RISK HIM BEING INJURED. WHO CAN I CONTACT TO GET THIS RESOLVED? PLEASE ADVISE URGENTLY. |
| 2/16/2019 | 2015 | TL* THE CONTACT OWNS A 2015 FORD EXPLORER. THE CONTACT STATED THAT THE AIR BAG WARNING INDICATOR ILLUMINATED WHILE DRIVING. THE CONTACT WAS CONCERNED FOR HIS SAFETY. THE VEHICLE WAS TAKEN TO CIOCCA FORD OF QUAKERTOWN (LOCATED AT 321 S WEST END BLVD, QUAKERTOWN, PA 18951, (215) 536-8600) WHERE IT WAS DIAGNOSED THAT THE WIRING HARNESS FOR THE SECOND ROW DRIVER SIDE INFLATABLE SEAT BELT DEPLOYMENT CONTROL FAILED AND NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED DUE TO THE REPAIR FEES. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND PROVIDED CASE NUMBER: CAS-17203222. THE CONTACT WAS REFERRED TO NHTSA. THE APPROXIMATE FAILURE MILEAGE WAS 61,000. |
| 3/1/2019 | 2015 | SECOND ROW DRIVERS SIDE SEAT BELT FAILED TO RETRACT AND IS UNUSABLE |
| 4/7/2019 | 2017 | THE SECOND ROW SEATBELT AIRBAGS CONTINUE TO SET OFF THE AIRBAG SENSOR ON THE CONTROL PANEL AND FORD TECHNICIANS CAN FIND NOTHING TO CORRECT. SENSOR SET OFF WHILE DRIVING AND PASSENGER BELTED INTO DRIVER SIDE SECOND ROW SEAT BELT THAT CONTAINS A SEATBELT AIRBAG. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 4/19/2019 | 2015 | 1ST CONCERN: MY 2015 FORD EXPLORER IS AT 84,000 MILES. I HAVE CAPTAIN (BUCKET) SEATS FOR THE 2ND ROW. ABOUT 6 MONTHS AGO, MY SON COULDN'T GET OUT HIS SEAT BELT. THE RED BUTTON WOULDN'T RELEASE AND IT WAS TIGHT AROUND HIS WAIST, EVENTUALLY I WAS ABLE TO MAKE ENOUGH ROOM FROM HIM TO SLIDE UNDER THE LAP BELT. THE ESTIMATE I RECEIVED 3 WEEKS AGO WAS $230 NOT COVERED UNDER WARRANTY. I HAVE NEVER HAD TO REPLACE A SEAT BELT. 2ND CONCERN: THIS PAST WEEKEND TRAVELING 70 MPH ON A HIGHWAY I HEARD FLAPPING OUTSIDE THE FRONT DRIVERS WINDOW THE PANEL WAS SHAKING FOR ABOUT 30 SECONDS THEN FLEW OFF. BEFORE I COULD SAFELY STOP THE RUBBER THAT WOULD HAVE BEEN UNDERNEATH THE PANEL CAME LOOSE AND STARTED HITTING THE DRIVER'S SIDE WINDOW. I INSPECTED THE PASSENGERS SIDE AND IT HAS ALSO LIFTED AND WILL COME OFF SOON. I HAVEN'T HAD AN OPPORTUNITY TO GET AN ESTIMATE BUT I FEEL AS THESE ARE ISSUES THAT SHOULD BE HAPPENING. BOTH IN MY OPINION ARE SAFETY CONCERNS, NOTHING SHOULD BE FLYING OFF THE CAR AND SEAT BELTS SHOULD WORK. |
| 4/22/2019 | 2016 | THE AIRBAG WARNING LIGHT HAS COME ON. IN TAKING THE CAR TO THE DEALERSHIP, THIS WAS TRACED BACK TO FORD'S ERROR CODE DTC B141B AND/OR B141C. THIS ERROR CODE HAS TO DO WITH FORD INSTALLING A DEFECTIVE WIRING HARNESS FOR THE REAR SEAT INFLATABLE AIRBAGS AND COULD CAUSE THEM TO FAIL TO OPERATE DURING A COLLISION. THE DEALERSHIP (SHEEHY FORD, MIDLOTHIAN, VA) REFUSES TO REPAIR THE VEHICLE. I ALSO CONTACTED FORD |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | MOTOR COMPANY TWICE (5/29/19 AND IN APRIL 2019) AND THEY ALSO REFUSE TO REPAIR THE VEHICLE DESPITE IT BEING AN OBVIOUS SAFETY DEFECT THAT SHOULD BE COVERED UNDER THEIR SAFETY RESTRAINT WARRANTY. THE FACT THAT FORD IS REFUSING TO STAND BEHIND THE SAFETY OF THEIR VEHICLE HAS ME CONCERNED. *TR |
| 8/2/2019 | 2014 | TL* THE CONTACT OWNS A 2014 FORD EXPLORER. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 25 MPH, THE DRIVER LOST CONTROL OF THE VEHICLE AND DROVE INTO A VERY STEEP DITCH. DURING THE CRASH, THE 3RD ROW PASSENGER SIDE SEAT BELT MALFUNCTIONED AND FAILED TO SECURE THE 7 YEAR OLD PASSENGER WHILE SEATED IN A BOOSTER. THE PASSENGER WAS PROJECTED FORWARD MAKING CONTACT WITH THE REAR SECTION OF THE 2ND ROW SEAT. THE PASSENGER SUSTAINED A SEVERE INJURIES WHICH INCLUDED A CONCUSSION AND A HEAD AVULSION. A POLICE REPORT WAS TAKEN AT THE SCENE AND THE VEHICLE WAS TOWED AWAY. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE MANUFACTURER AND LOCAL DEALER WERE NOT NOTIFIED. THE FAILURE MILEAGE WAS 94,000. |
| 8/5/2019 | 2017 | THE REAR PASSENGER SIDE SEATBELT BUCKLE ASSEMBLY BROKE WHEN MY PASSENGER WAS ATTEMPTING TO BUCKLE HERSELF. A SPRING POPPED OUT OF THE CENTER SEATBELT MECHANISM AND THE SEATBELT WOULD NO LONGER LATCH. THE CAR WAS PARKED AND OFF AT THE TIME. WE BROUGHT THE CAR TO THE DEALER FOR THE SEATBELT TO BE FIXED. THE PART # FOR THE SEATBELT BUCKLE ASSEMBLY IS DB5Z-7860044-EB. THIS PART WAS NOT COVERED |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | UNDER THE MANUFACTURER'S WARRANTY DUE TO THE MILEAGE AND WAS NOT CONSIDERED A COVERED PART ON OUR EXTENDED WARRANTY. THE REGIONAL SERVICE MANAGER INFORMED ME THAT THIS WAS CONSIDERED NORMAL WEAR AND TEAR ON OUR VEHICLE WHICH IS ONLY 2 YEARS OLD. |
| 8/20/2019 | 2015 | THE AIRBAG LIGHT CAME ON AND THIS IS WHAT THE CODE SAYS. RESTRAINT CONTROL MODULE SECOND ROW DRIVER SIDE INFLATABLE SEATBELT DEPLOYMENT CONTROL |
| 10/30/2019 | 2016 | AIRBAG WARNING LIGHT APPEARED ON INSTRUMENT GAUGE @ APPROX 65,000 MILES. THE CONCERN IS FOR THE REAR SEAT RESTRAINT SYSTEMS THAT HAVE AIRBAGS BUILT INTO THE SEATBELT SHOULDER STRAPS. THIS DESIGN FLAW BY FORD MOTOR CO HAS RESULTED IN FAULTY WIRE HARNESS SYSTEMS FOR THE SEAT BELT AIRBAGS. FORD IS NOT TAKING ACTION BECAUSE THERE IS NO OFFICIAL "RECALL" EVEN THOUGH THIS IS A WELL KNOWN DESIGN DEFECT. FORD IS LEAVING THE RESPONSIBILITY UP TO CONSUMERS TO PAY OUT-OF-POCKET FOR THIS REPAIR @ A $660.00 COST!!! THIS IS ABSOLUTELY UNACCEPTABLE AS WE ARE TALKING ABOUT ARGUABLY THE MOST IMPORTANT SAFETY FEATURE OF A MODERN AUTOMOBILE...THE AIRBAGS!!! FORD CLEARLY CANNOT STAND BEHIND THEIR OWN PRODUCTS FROM A SAFETY STANDPOINT, SO CONSUMERS SUCH AS MYSELF ARE FORCED TO PAY THE $660.00 CHARGE IN ORDER TO PROTECT THE PASSENGERS (OFTEN CHILDREN IN OUR SCENARIO) IN THE BACKSEAT OR TAKE THE DEATHLY RISK OF SAFETY AIRBAGS NOT DEPLOYING IN AN ACCIDENT SCENARIO? YOU'VE GOT TO BE KIDDING ME. EXTREMELY |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | SHAMEFUL AND DISAPPOINTING THAT ONE OF THE BIGGEST AUTOMOBILE MANUFACTURERS IN THE WORLD CANNOT STAND BEHIND IT'S OWN SAFETY PRODUCTS. THIS NEEDS TO BE ISSUED A RECALL PRONTO...THIS IS PEOPLE'S SAFETY WE ARE TALKING ABOUT HERE! |
| 12/26/2019 | 2015 | THE AIRBAG WARNING LIGHT CAME ON WITHOUT WARNING OR INCIDENT (NO ACCIDENT OR IMPACT, JUST STARTED MY CAR ONE DAY AND THE LIGHT STAYED ON). PER RESEARCH DONE ONLINE WITH SAME WARNING LIGHT, MAKE AND MODEL OF VEHICLE, ISSUE APPEARED TO BE WITH THE REAR/2ND ROW SEAT BELT AIRBAGS DISENGAGING AND THIS CAUSES NONE OF THE AIRBAGS TO WORK IN THE VEHICLE IN THE EVENT OF A CRASH. AT THE TIME THE LIGHT INITIALLY CAME ON I HAD ABOUT 72K MILES ON MY CAR, AND IT APPEARS THIS IS ABOUT THE SAME MILEAGE OF ALL OTHER EXPLORER OWNERS WITH THIS ISSUE. I TOOK IT IN FOR SERVICE FOR THE LIGHT AND INCURRED REPAIRS TOTALING JUST UNDER $1,000 TO HAVE THE PARTS REPLACED AND THE AIRBAGS FUNCTION AGAIN. THE FACT THAT I DID NOTHING (OTHER THAN TURN ON MY CAR WHEN IT WAS APPROACHING THE 70-75K MILEAGE MARK) TO CAUSE MALFUNCTION OF THE AIRBAGS BUT HAD TO PAY $1,000 TO FIX IT AND HAVE AIRBAGS WORK IN MY CAR IN THE EVENT OF AN ACCIDENT IS DISAPPOINTING. FORD NEEDS TO ISSUE A RECALL FOR THIS, IT'S UNACCEPTABLE TO HAVE OWNER AND PASSENGER SAFETY COMPROMISED THROUGH NO FAULT OF THE OWNER, AND HAVE TO INCUR COSTLY REPAIRS TO MAKE THIS RIGHT. I KEPT MY RECEIPTS AVAILABLE TO PROVE CAUSE AND COST OF AIRBAG LIGHT ISSUE. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 1/1/2020 | 2012 | THE CONTACT OWNS A 2012 FORD EXPLORER. THE CONTACT STATED THAT THE REAR SECOND PASSENGERS SIDE SEAT BELT WAS FAULTY. THE CONTACT TOOK THE VEHICLE TO THE LOCAL DEALER, WHERE IT WAS DIAGNOSED WITH NEEDING THE REAR SECOND PASSENGERS SIDE SEAT BELT TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED DUE TO PARTS NOT BEING AVAILABLE. THE MANUFACTURER HAD BEEN INFORMED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 70,000. THE CONTACT STATED THE ISSUE HAS BEEN RESOLVED VIA LOCAL DEALER OPENING UP MECHANISM AND FINDING TWIST IN SEATBELT, WHICH WOULDNT ALLOW USE OF THE SEATBELT BUT HAVEN'T RECEIVED A NEW SEATBELT WHICH SEEMS TO BE ON BACKORDER. |
| 2/13/2020 | 2014 | DRIVER SIDE REAR SEAT BELT WILL NOT PULL OUT OF RETRACTOR |
| 2/15/2020 | 2016 | TL* THE CONTACT OWNS A 2016 FORD EXPLORER. THE CONTACT STATED THAT THE SECOND-ROW MIDDLE SEAT FAILED TO UNLATCH AS DESIGNED. THE CONTACT STATED THAT HIS CHILD WAS CONFINED IN THE SEAT WHILE STRAPPED INTO THE SEAT BELT. THE CONTACT TOOK THE VEHICLE TO VAN DRUNEN FORD (3233 183RD ST, HOMEWOOD, IL 60430) AND WAS INFORMED THAT THERE WERE NO RECALLS ON THE VEHICLE AND WAS PROVIDED AN ESTIMATE FOR THE REPAIR. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 60,600. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 4/5/2020 | 2016 | REAR AIRBAG SEATBELT FEATURE MALFUNCTIONS BY TRIGGERING AIRBAG WARNING LIGHT ON DASH BOARD. OBD DIAGNOSTIC PRODUCES NO ERROR CODES. WARNING LIGHT IS INTERMITTENT AND MOST COMMON AFTER REAR PASSENGERS USE SEAT BELTS. |
| 4/28/2020 | 2015 | I BOUGHT THIS VEH. IN 2016 WHEN IT HAD 17,000 MILES ON IT. WITHIN 2 WEEKS I GOT A WARNING LIGHT FOR THE AIR BAG SYSTEM. TOOK IT TO THE DEALER AND WAS ADVISED THAT THE SENSOR GIVING TROUBLE WAS IN THE SEAT BELT AIRBAG FOR THE REAR PASSENGER SEAT. I WAS REPAIRED UNDER WARRANTY FOR TECHNICAL SERVICE BULLETIN TSB-0001 PUBLISHED JANUARY, 2016. I HAVE HAD TROUBLE OFF AND ON EVER SINCE WITH THE AIRBAG WARNING LIGHT. IT WOULD STAY ON FOR A LITTLE WHILE AND THEN GO OFF. I HAD THE DEALER CHECK IT AND THEY COULD NOT FIND A PROBLEM WITHOUT THE LIGHT BEING ON. THIS WEEK IT STAYED ON SO I HAD THE DEALER CHECK IT. IT HAD THE CODE B141B WHICH WAS THE SAME CODE REPAIRED IN 2016. SINCE THE REPAIR WAS WARRANTEED FOR 12 MONTHS THE DEALER WANTS $797 TO FIX THE CURRENT ISSUE, WHICH IS THE SAME ONE FROM 2016. I VERY SELDOM USE THE BACK SEAT AS I HAVE NO CHILDREN IN MY HOUSE. I WOULD RATHER NOT SPEND THAT MONEY, SINCE I AM RETIRED, BUT IF I DON'T GET IT FIXED ALL OF THE OTHER AIR BAGS IN THE VEHICLE WILL NOT WORK. I CONFIRMED WITH A SERVICE ADVISOR THAT NONE OF THE AIRBAGS IN THE VEHICLE WOULD DEPLOY IF THAT LIGHT IS ON. I ASKED HIM IF THERE WAS A WAY TO BY-PASS IT IN THE SYSTEM SO THE LIGHT WOULD GO OFF AND HE |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | SAID IT IS A FMVSS THAT COULD NOT BE MODIFIED AND MUST BE FIXED THE RIGHT WAY. I FEEL LIKE I AM BEING HELD HOSTAGE IN AN UNSAFE VEHICLE UNLESS I PAY THE $797 TO GET IT FIXED (AGAIN). |
| 6/18/2020 | 2012 | FOR ALL THREE REAR SEAT BELTS THE LATCH PLATE WILL NOT ENGAGE IN THE SEAT BELT BUCKLE. THE REAR SEATS ARE RARELY USED SO I DON'T KNOW HOW LONG THEY HAVE BEEN INOPERATIVE. |
| 7/9/2020 | 2016 | AIRBAG WARNING LIGHT INDICATOR CAME ON. FORD DEALERSHIP (SOUND FORD RENTON,WA) PERFORMED $150 DIAGNOSTIC WHICH PRODUCE CODE STORED IN RCM "B141B" FOR 2ND ROW DRIVER SIDE INFLATABLE SEAT BELT DEPLOYMENT CONTROL USING OASIS THE DEALER FOUND TSB 16--0001. THIS SERVICE BULLETIN REPLACES THE CONNECTORS FOR THE LEFT AND RIGHT SECOND ROW SEATING AIRBAG CONTROL AND RE-ROUTES HARNESS. VEHICLE HAS 45,319 MILES (BELOW THE 5YR/60,000 SRS WARRANTY) HOWEVER DEALER CLAIMS REPAIR IS OUT OF POCKET. DEALER ALSO STATED WHEN THE AIRBAG LIGHT IS ON NO AIRBAGS WILL DEPLOY IN EVENT OF ACCIDENT. |
| 9/1/2020 | 2017 | THE SRS WARNING LIGHT ON THE DASH IS ILLUMINATED INDICATING THAT IN THE EVENT OF A COLLISION THE AIRBAGS WILL NOT DEPLOY. VEHICLE WAS TAKEN TO LOCAL FORD DEALER WHERE FAULT CODES INDICATE THAT TWO WIRE HARNESSES OR CONNECTORS NEED TO BE REPLACED. COST OF SERVICE WAS QUOTED AS $1600. HOWEVER, MILEAGE (46,500) AND AGE (4 YEARS) WOULD INDICATE THAT REPAIR SHOULD BE MADE UNDER 5 YR / 60,000 MI WARRANTY. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | FORD HAS DENIED WARRANTY. SERVICE DEPARTMENT AT LOCAL DEALERSHIP AND FORD CUSTOMER CARE HAVE BEEN CONTACTED BY PHONE AND EMAIL MULTIPLE TIMES WITHOUT RESOLUTION. THEY POINT TO THE WIRE HARNESS AS THE ROOT CAUSE OF THE SRS SYSTEM NOT WORKING AND CLAIM THAT THE WIRE HARNESS IS NOT COVERED BY WARRANTY. |
| 9/1/2020 | 2018 | TL* THE CONTACT OWNS A 2018 FORD EXPLORER. THE CONTACT STATED THAT THE INFLATABLE SEAT BELT FAILED TO RETRACT WITH BRITAX FRONTIER CLICK TIGHT CHILD SAFETY SEAT WHILE USING THE HIGH BACK WITH THE REAR PASSENGER SHOULDER STRAP FAILED TO SECURE THE CHILD IN THE VEHICLE. AS THE CHILD WAS SEEN HANGING OUT THE WINDOW WHILE THE MOTHER WAS DRIVING. THE CONTACT STATED THAT THE CAR SEAT WAS SECURED WITH THE LATCH SYSTEM HOWEVER, THE CHILD WAS NOT SECURED WITH THE VEHICLE'S SEAT BELT. THE CONTACT STATED THAT THE FAILURE ALSO OCCURRED WITH THE GRACO TURBO BOOSTER WHICH DOES NOT HAVE A LATCH SYSTEM. THE MANUFACTURERS FORD AND BRITAX WERE MADE AWARE OF THE FAILURE. THE FORD MANUFACTURER OPENED A CASE. THE BRITAX MANUFACTURER OFFERED NO ASSISTANCE. THE APPROXIMATE FAILURE MILEAGE WAS 18,000.*DT THE CONSUMER PROVIDED PHOTOS. *TR |
| 10/20/2020 | 2016 | AIRBAG WARNING LIGHT ILLUMINATED ON VEHICLE. CHECKED ALL WIRES UNDER THE SEAT AND NONE ARE LOOSE OR DAMAGED. SEARCHED TOPIC ONLINE AND APPEARS TO BE A KNOWN ISSUE. FORD ISSUED A SERVICE BULLETIN FOR THE REPAIRS BUT WILL NOT COVER UNDER |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | WARRANTY OR ISSUE RECALL. THIS IS A SAFETY ISSUE AS THE AIRBAGS WILL NOT DEPLOY WHEN THIS LIGHT IS ILLUMINATED. |
| 11/2/2020 | 2011 | MY AIR BAG CONTROL LIGHT CAME ON 3 YEARS, I TOOK THE VEHICLE TO THE FORD DEALERSHIP A D THEY DISCOVERED THE SEAT BELT PRETENSIONER HAD SHORTED OUT. IT WAS REPLACED AT MY EXPENSE. FAST FORWARD TO TODAY AND THE SAME LIGHT IS BACK ON FOR WHAT I IMAGINE IS THE SEAT BELT PRETENSIONER AGAIN! THE LIGHT STAYS ON FROM THE TIME THE CAR IS STARTED TILL IT'S TURNED OFF. |
| 11/6/2020 | 2016 | RANDOMLY ONE OF THE CAPTAIN CHAIRS SEAT BELTS NO LONGER BUCKLES. IT'S A AIRBAG SEATBELT WITH A DIFFERENT TYPE OF LATCH. WE HAVE NUMEROUS PROBLEMS WITH THESE TYPE OF BUCKLES SINCE WE BOUGH THE VEHICLE. THEY HAD TO REPLACE THE WHOLE HOUSING UNIT ON THE OTHER SIDE WITHIN THE FIRST 6 MONTHS BECAUSE IT JUST FELL APART. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 12/1/2020 | 2016 | THERE IS AN SRS AIRBAG WARNING LIGHT ON THE DASHBOARD THAT USED TO INTERMITTENTLY DISPLAY. NOW IT IS ON CONSISTENTLY WHEN THE VEHICLE IS DRIVEN. IT IS DUE TO A CIRCUIT FAILURE OR A BROKEN CORD LEADING TO THE DRIVER SIDE MIDDLE ROW SEATBELT AIRBAG. DIRECTLY FROM SITE: HTTPS://FORD.OEMDTC.COM/1203/AIR-BAG-WARNING-LIGHT-ILLUMINATED-WITH-DTC-B141B-B141C-2014-2016-FORD-EXPLORER TSB 16-0001 AIR BAG WARNING LIGHT ILLUMINATED WITH DIAGNOSTIC TROUBLE CODE (DTC) B141B AND/OR B141C THIS IS NOT NORMAL WEAR AND TEAR BUT A SAFETY ITEM DESIGN BY FORD THAT HAS FAILED IN THE VEHICLE. FORD DEALERSHIP CLAIMS THAT THIS IS NOT WARRANTY FAILURE. BUT SOUNDS LIKE AN ELECTRICAL AND SAFETY ISSUE TO ME...WHICH SHOULD BE COVERED UNDER WARRANTY. THE TRUTH TO THE MATTER IS...FORD DOES NOT CARE THAT A POTENTIALLY HIGH RISK PROBLEM HAS BEEN IDENTIFIED AS A FAILURE ON THE COMPANY'S END BUT THEY DON'T CARE ENOUGH TO DO ANYTHING ABOUT IT. WELL..OTHER THAN CHARGE THE CUSTOMER CLOSE TO $1000 OUT OF POCKET TO FIX FOR A POOR DESIGN ON FORD'S END. THE FORD DEALERSHIP SERVICE DEPARTMENT DOES NOT KNOW HOW THIS SAFETY FEATURE BROKE. IF WE WERE TO GET IN AN ACCIDENT WHILE THE AIRBAG IS IN THIS STATE, IT WOULD NOT DEPLOY AND THE LIVES OF ALL PASSENGERS IN JEOPARDY! |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 12/12/2020 | 2015 | MY FAMILY AND I PLANNED TO GO TO TOWN ONE DAY. THE VEHICLE WAS PARKED IN MY DRIVEWAY AT THE TIME AND ALL SEAT BELTS WERE WORKING THE NIGHT BEFORE AS MY FAMILY AND I HAD WENT TO TOWN THE NIGHT BEFORE FOR DINNER WITH OUT ANY PROBLEMS WITH THE SEATBELTS. WHEN MY DAUGHTER GOT IN THE BACK DRIVER SEAT AND ATTEMPTED TO PUT ON HER SEAT BELT IT WAS IN A LOCKED POSITION. MY WIFE AND I ATTEMPTED TO GET THE SEATBELT TO UNLOCK BUT IT WOULD NOT. I TOOK IT TO THE DEALERSHIP BILL TALLEY FORD IN MECHANICSVILLE VIRGINIA. THEY LOOKED IT OVER AND SAID THAT THE MECHANISM HAD BECAME LOCKED UP (SOMETHING I WAS ALREADY AWARE OF). AND ACCORDING TO THEM IT WOULD NEED TO BE REPLACED BECAUSE IT IS THE ONLY WAY TO UNLOCK IT. I WAS NOT IN ANY ACCIDENTS AND THE REAR SEAT BELTS THAT ARE INSTALLED ON MY FORD EXPLORER ALSO HAVE BUILT-IN AIRBAGS. MY PERSONAL BELIEF IS IT HAS TO DO WITH THE AIRBAG SYSTEM BUILT INTO THE SEATBELT WHY IT HAS BECOME LOCKED. THE DEALERSHIP EXPLAIN TO ME IT WOULD COST ME $700 TO HAVE IT REPAIRED. WHICH I RESPONDED I DIDN'T BELIEVE I SHOULD HAVE TO PAY ANYTHING CONSIDERING THAT IT IS A SAFETY DEVICE AND THE VEHICLE HADN'T BEEN ANY ACCIDENTS. MY PERSONAL OPINION IS A CAR MANUFACTURER/DEALERSHIP SHOULD REPLACE ANY BROKEN SAFETY DEVICES WITHOUT QUESTION AND WITHOUT CHARGING. ESPECIALLY WHEN IT WASN'T THE OWNER'S FAULT. TO THIS DAY THE SEAT BELT STAYS IN A LOCKED UNUSABLE POSITION WHICH LUCKILY I HAVE THIRD ROW SEATING IN MY EXPLORER SO MY CHILDREN CAN SIT IN THE THIRD ROW REAR |

| DATE | MODEL YEAR | DESCRIPTION |
| --- | --- | --- |
| | | SEATS WHERE THE SEAT BELTS WORK BUT IT WOULD BE VERY UNFORTUNATE IF MY FAMILY OF FOUR OR ANY FAMILY OF FOUR WHO DIDN'T HAVE THE THIRD ROW SEATING. IF SOMEONE COULD PLEASE LOOK INTO THIS AND GET BACK TO ME IT WOULD BE GREATLY APPRECIATED. THANK YOU FOR YOUR TIME AND HELP. I ALSO DID SOME RESEARCH ON A FEW FORD ONLINE FORUMS AND SEEN THAT THERE HAVE BEEN HUNDREDS OF PEOPLE WITH THE SAME COMPLAINT/PROBLEM. |
| 2/1/2021 | 2014 | WE HAVE A 2014 FORD EXPLORER SPORT AND THE SEATBELT IS IN A RETRACTED POSITION AND IS STUCK. WE HAD IT INTO FORD AND THEY WERE ABLE TO GET IT TEMPORARILY UNSTUCK BUT IT IS STUCK AGAIN. THEY PRICED THE PART AND LABOR AND IT WILL BE $415 TO REPLACE. WE ARE OVER THEIR SAFETY WARRANTY FOR MILEAGE. THEY INSTRUCTED US TO REACH OUT TO YOU TO HELP WITH ESCALATING THE SITUATION TO FORD. WE CANNOT USE THAT SAFETY BELT AT ALL IN ITS CURRENT CONDITION. WE HAVE ALWAYS HAD A CARSEAT WITH LATCHES IN THAT POSITION SO SINCE WE HAVE OWNED IT THE SEATBELT HAS BEEN USED MINIMALLY. IF YOU COULD ESCALATE THIS SITUATION TO FORD FOR A RESOLUTION WE WOULD APPRECIATE IT. THANK YOU! |
| 2/14/2021 | 2016 | TL* THE CONTACT OWNS A 2016 FORD EXPLORER. THE CONTACT STATED THAT THE PASSENGER MIDDLE ROW SEAT BELT FAILED TO LATCH CORRECTLY. THE CONTACT SPOKE WITH BREDEMANN FORD (2038 WAUKEGAN RD, GLENVIEW, IL 60025, (847) 510-5585) WHO STATED THAT THE SEAT BUCKLE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | THE MANUFACTURER WAS MADE AWARE AND FAILURE AND INFORMED THE CONTACT THAT THE VIN WAS NOT UNDER RECALL AND THERE WAS NO WARRANTY ON THE VEHICLE. THE APPROXIMATE FAILURE MILEAGE WAS 33,778. |
| 2/18/2021 | 2015 | FRAYED WIRING UNDER THE PASSENGER SIDE SECOND ROW SEATING. THIS IS CAUSING THE AIRBAG LIGHT TO BE ON AND WILL NOT ALLOW THAT AIRBAG TO DEPLOY IN AN ACCIDENT. FORD IS AWARE OF THE PROBLEM AND THAT IT IS A COMMON ISSUE THAT THEY DO NOT KNOW WHAT CAUSES IT. COMPLETELY UNACCEPTABLE FOR A FAMILY VEHICLE TO HAVE THIS ISSUE AND THE MANUFACTURER NOT TAKE CARE OF IT. WE DO NOT BELIEVE THIS VEHICLE I SAFE TO TRANSPORT OR HAVE PASSENGERS IN THE BACK SEAT NOW. |
| 4/9/2021 | 2016 | MY AIRBAG LIGHT CAME ON AND THE FORD DEALER WARNED ME THAT THE AIRBAGS WOULD NOT DEPLOY UNTIL I GOT THE ISSUE FIXED. THIS IS A KNOWN ISSUE BY FORD, AS THEY HAVE ISSUED TSB IT. MY EXPLORER SPORT IS 4 MONTHS OVER THE 5 YEAR/60,000 MILE POWER TRAIN WARRANTY, SO I CONTACTED ASSURANT SOLUTIONS BECAUSE I BOUGHT A 72 MONTH/75,000 MILE EXTENDED WARRANTY THROUGH USAA ON 1/6/2016. THIS WAS MY FIRST CLAIM AND THEY DENIED THE CLAIM BECAUSE THEY SAID THAT 'SAFETY RESTRAINT SYSTEMS' WAS AN 'EXCLUDED ITEM'! WHAT'S INFURIATING IS THAT THEY COVER ELECTRICAL ASSEMBLY, INTERIOR ELECTRONICS AND POWER TRAIN ELECTRONICS, BUT NOT 'SAFETY' ELECTRICAL COMPONENTS!! I RAISED CANE WITH THE GENERAL MANAGER OF THE FORD DEALERSHIP AND THEY WENT BACK TO FORD FOR A |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | 'GOODWILL' WARRANTY COVERAGE AND THEY AGREED TO PAY FOR ALL BUT $261 OF THE REPAIR. WHILE I SINCERELY APPRECIATE THE GOODWILL OFFER, FORD LOST ANY FUTURE BUSINESS FROM ME FOR NOT PROACTIVELY OFFERING THE GOODWILL COVERAGE FROM THE START BEFORE I HAD TO PURSUE OTHER OPTIONS. SHAME ON FORD!! IT DOESN'T RISE TO THE LEVEL OF A FULL RECALL, BUT IT IS A KNOWN DEFECT WITH A CRITICAL SAFETY FEATURE, SO THEY SHOULD HAVE COVERED IT FROM THE START WHEN PRESENTED WITH THE AIR BAG LIGHT COMING ON! *TR |
| 5/12/2021 | 2016 | SECOND ROW PASSENGER SEATBELT RECIEVER IS BROKEN AND PART HAS NOT BEEN AVAILABLE FOR OVER 2 YEARS. PART # DB5ZZ786004EB. THIS IS A MAJOR SAFETY ISSUE AND FORD HAS NO IDEA WHEN THEY WILL RESUME MAKING THIS PART. ALSO, PARTS FOR PILLLAR RECALL ARE NOT AVAILABLE. PILLAR FALLS APART, CAUSING DAMAGE TO MOULDING AND NOW WATER HAS ENTERED AND DAMAGED THE VEHICLE. FORD HAS NO ACCOUNTABILITY? PEOPLE ARE FIXING THIS ISSUE THEMSELVES ( LIKE WE DID WITH OTHER SIDE), AND NOW AFTER MARKET PARTS HAVE BECOME SCARCE TOO. |
| 6/1/2021 | 2016 | THE AIRBAG LIGHT COMES ON DUE TO THE CONNECTORS IN THE WIRING HARNESS USED FOR THE AIRBAG AND SEATBELT RESTRAINT SYSTEM. WHEN THE LIGHT IS ON THE AIRBAGS WILL NOT DEPLOY, MAKING THIS A SAFETY RELATED ISSUE. FORD HAS A TECHNICAL SERVICE BULLETIN FORD TSB 16-0001 SHOWING THE ISSUE. THIS IS NOT COVERED FOR REPAIR AND THE COST IS $900.00 TO $1100.00 PER SIDE (THERE ARE TWO SIDES) TO |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | REPLACE THE WIRE HARNESS AND CONNECTORS. HTTPS://WWW.TSBSEARCH.COM/FORD/16-0001 |
| 7/22/2021 | 2016 | THE SYSTEM THAT FAILED IS THE SEAT BELT BUCKLE ON THE 40 SEAT (OF THE 60/40 SECOND ROW SEATING). THE CLIP INSIDE THE SEATBELT BROKE WHILE SECURING MY CHILD IN THE SEAT. THIS FAULTY BELT BUCKLE PUT MY CHILD'S SAFETY AT RISK. WE COULD NOT TRAVEL, DELAYING OUR TRIP ON THE DAY WE WERE TO LEAVE. IF AN ACCIDENT OCCURRED, THIS COULD HAVE RESULTED IN SERIOUS INJURY TO MY CHILD. THE BELT BUCKLE WAS REMOVED AND TAKEN TO THE CLOSEST FORD DEALERSHIP. A NEW BELT BUCKLE WAS ORDERED, COSTING $115. THE SEATBELT BUCKLE WAS REMOVED AND BROUGHT INTO FORD TO EXAMINE. NO CONCERN WAS OBSERVED BY THE SERVICE PARTS EMPLOYEE AS HE GLANCED OVER BROKEN BUCKLE TO ENSURE HE ORDERED THE CORRECT PART. NO WARNINGS OR "SYMPTOMS" WERE PRESENT PREVIOUSLY TO THE FAILED SEATBELT BUCKLE. A CHEAP PIECE OF PLASTIC TO HOLD MY CHILD IN A SEATBELT BUCKLE FAILED. THE BROKEN BUCKLE IS AVAILABLE FOR INSPECTION. A NEW ONE IS BEING INSTALLED. |
| 10/27/2021 | 2015 | MY CHILD WAS TRYING TO BUCKLE HER SEATBELT (RIGHT SEAT, MIDDLE ROW) AND THE PART THAT YOU INSERT THE METAL INTO SNAPPED APART. HUGE SAFETY ISSUE. WHAT IF IT BROKE DURING AN ACCIDENT. WE WERE SITTING STILL (CAR IN PARK) IN OUR DRIVEWAY THANKFULLY. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 1/9/2022 | 2016 | THE CONTACT OWNS A 2016 FORD EXPLORER. THE CONTACT STATED THAT THE DRIVERS SIDE SECOND-ROW SEAT BELT MECHANISM HAD MALFUNCTIONED AND REMAINED LOCKED. THE VEHICLE WAS TAKEN TO THE LOCAL DEALER WHO DIAGNOSED THAT A PLASTIC PIECE INSIDE THE RECEIVING LATCH ASSEMBLY FRACTURED AND THE ENTIRE LATCH NEEDED TO BE REPLACED. THE LATCH WAS REPLACED AND THE FAILURE WAS FIXED. THE CONTACT STATED THAT LATER THE SAME FAILURE RECURRED ON THE SECOND-ROW PASSENGERS SIDE SEAT BELT. THE VEHICLE WAS REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE BUT NO ASSISTANCE WAS OFFERED. THE APPROXIMATE FAILURE MILEAGE WAS 102,000. |
| 2/20/2022 | 2015 | THE CONTACT OWNS A 2015 FORD EXPLORER. THE CONTACT STATED THAT WHILE HIS DAUGHTER WAS SEATED IN THE REAR PASSENGERS SIDE SEAT, THE SEAT BELT FAILED TO LATCH SECURELY. THE CONTACT STATED THAT THE SEAT BELT CASING HAD FRACTURED. THE CONTACT THEN STATED THAT THE FAILURE REOCCURRED WHILE HIS DAUGHTER WAS SEATED IN THE DRIVER'S SIDE REAR SEAT. THE VEHICLE WAS TAKEN TO A LOCAL DEALER, WHERE IT WAS DIAGNOSED AND DETERMINED THAT THE REAR PASSENGERS AND DRIVERS SIDE SEAT BELTS NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE, AND THE CONTACT WAS ADVISED TO FILE A COMPLAINT WITH THE NHTSA HOTLINE. THE APPROXIMATE FAILURE MILEAGE WAS 28,000. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 3/1/2022 | 2014 | FORD EXPLORER HAD KNOWN ISSUES WITH CONNECTORS UNDER THE REAR PASSENGER SEATS WHICH THEY DID A RECALL FOR CERTAIN VIN NUMBERS. THEY SAID IT ONLY EFFECTED CERTAIN VPN WHICH WERE FROM A SPECIFIC FACTORY IN CHICAGO I HAVE THE SAME ISSUE AND MY VIN IS NOT LISTED AND FORD AND THE DEALERSHIP WILL NOT DO ANYTHING TO HELP FIX THE PROBLEM. IF I PAY OUT OF POCKET THEY WANT 500 DOLLARS TO FIX IT. THE ISSUE IS CERTAIN 2014-2016 MODEL YEAR EXPLORER VEHICLES 2ND ROW INFLATABLE SEAT BELT - IN ALL OF THE AFFECTED VEHICLES, THE AIR BAG LIGHT MAY ILLUMINATE AS A RESULT OF A WORN OR DAMAGED CONNECTION TO THE REAR INFLATABLE SEAT BELT CONNECTOR AND IF THE LIGHT IS ON THAT MEANS THE AIR BAGS WILL NOT WORK. |
| 3/1/2022 | 2015 | THE CONTACT OWNS A 2015 FORD EXPLORER. THE CONTACT STATED THAT THE DRIVERS AND PASSENGERS SIDE MIDDLE ROW CAPTAIN CHAIR INFLATABLE SEAT BELT RECEIVERS HAD MALFUNCTIONED AND WERE INOPERABLE. THE CONTACT INDICATED THAT THE PASSENGERS SIDE SEAT BELT RECEIVER HOUSING AND THE INTERNAL CLIP HAD INITIALLY FRACTURED AND LATER THE DRIVER'S INTERNAL CLIP HAD FRACTURED MAKING THE SEAT BELTS UNUSABLE. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC WHO DIAGNOSED THAT THE SEAT BELTS NEEDED TO BE REPLACED. THE VEHICLE WAS NOT YET REPAIRED. THE LOCAL DEALER WAS NOTIFIED OF THE FAILURE. THE MANUFACTURER WAS NOT YET CONTACTED. THE FAILURE MILEAGE WAS 106,000. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 3/11/2022 | 2016 | 2ND ROW SEAT SEAT BELT NOT WORKING IS LOOSE AND WILL NOT RESET. TOOK IT TO FORD THEY WANT TO CHARGE ME A LOT OF MONEY, IT'S A SAFETY ISSUE |
| 3/17/2022 | 2016 | THE PASSENGER SECOND ROW SEATBELT WILL NOT LATCH, THE FORD DEALER WANT'S $240.00 TO DIAGNOSE THE PROBLEM. THE PASSENGER SECOND ROW SEATBELT HAS AN AIRBAG BUILT IN, SO IT WILL BE AN EXPENSIVE REPLACEMENT, SOMETHING I DO NOT FEEL SHOULD BE AT A COST TO THE CONSUMER. MAJOR SAFETY ISSUE IN MY OPINION! WE NOTICED IT WHEN WE TRIED TO LATCH OUT HANDICAP TEENAGER IN THE CAR, SINCE WE COULD NOT LATCH HER IN, WE HAD TO MOVE HER TO THE OTHER SIDE OF THE CAR. |
| 8/5/2022 | 2017 | THE CONTACT OWNS A 2017 FORD EXPLORER. THE CONTACT STATED THAT THE VEHICLE PREVIOUSLY HAD THE DRIVER'S SIDE REAR SEAT BELT RETAINER REPLACED; HOWEVER, THE FAILURE RECURRED WITH THE PASSENGER'S SIDE REAR SEAT BELT RETAINER. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE PASSENGER'S SIDE REAR SEAT BELT RETAINER HAD FRACTURED INSIDE THE BUCKLE ASSEMBLY. THE DEALER INFORMED THE CONTACT THAT THE PASSENGER'S SIDE REAR SEAT BELT RETAINER NEEDED TO BE REPLACED; HOWEVER, THE PART WAS ON BACKORDER. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND INFORMED THE CONTACT THAT THERE WAS NO RECALL ASSOCIATED WITH THE VIN. THE FAILURE MILEAGE WAS APPROXIMATELY 78,000. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 9/1/2022 | 2019 | 2ND ROW SEAT BELT MALFUNCTIONED DURING WHEN REAR ENDED RECENTLY. SEAT BELT CAME UNLATCHED ON MY NIECE THROWING HER TOWARDS THE FRONT PASSENGER SEAT. CAR HAS BEEN TOTALED. INJURY WAS TO DRIVER. |
| 9/12/2022 | 2013 | THE CONTACT OWNS A 2013 FORD EXPLORER. THE CONTACT STATED THAT THE SECOND-ROW DRIVERS SIDE SEAT BELT HAD MALFUNCTIONED AND WOULD NOT SAFELY SECURE THE PASSENGER. THE CONTACT INDICATED THAT THE SEAT BELT BUCKLE MECHANISM HAD FAILED AND COULD NOT BE LATCHED. THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE LOCAL DEALER AND MANUFACTURER WERE BOTH NOTIFIED OF THE FAILURE BUT NO ASSISTANCE WAS OFFERED. THE FAILURE MILEAGE WAS 76,000. |
| 9/18/2022 | 2015 | THE CONTACT OWNS A 2015 FORD EXPLORER. THE CONTACT STATED THAT HE RECEIVED NOTIFICATION OF CUSTOMER SATISFACTION PROGRAM (CSP): 21B11 (SECOND ROW INFLATABLE SEAT BELT); HOWEVER, THE PART TO DO THE REPAIR WAS NOT YET AVAILABLE. THE CONTACT STATED THAT THE AIR BAG WARNING LIGHT WAS ILLUMINATED. THE LOCAL DEALER AND TWO UNKNOWN DEALERS WERE CONTACTED SEVERAL TIMES AND INFORMED THE CONTACT THE PART WAS NOT YET AVAILABLE FOR CUSTOMER SATISFACTION PROGRAM. THE DEALER LATER INFORMED THE CONTACT THAT THE CUSTOMER SATISFACTION PROGRAM HAD EXPIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND INFORMED THE CONTACT THAT THEY COULD NOT ASSIST BECAUSE THE CUSTOMER SATISFACTION PROGRAM HAD EXPIRED. THE MANUFACTURER REFERRED THE |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | CONTACT TO THE NHTSA HOTLINE FOR ASSISTANCE. THE VEHICLE WAS NOT DIAGNOSED NOR REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 45,000. |
| 12/28/2022 | 2016 | THE 2ND ROW SEATBELTS IN MY 2016 FORD EXPLORER CONTAIN MINI-AIRBAGS. THERE IS A DESIGN FLAW THAT CAUSES THE CONNECTION TO THE SEATBELTS TO FAIL, DISABLING ALL AIRBAGS IN THE VEHICLE. FORD ISSUED A CSP IN JANUARY OF 2021 AND WAS SUPPOSED TO NOTIFY ALL OWNERS OF ALL AFFECTED VEHICLES. I WAS NEVER NOTIFIED. IN APRIL 2022 MY VEHICLE WAS LEFT WITH A FORD DEALERSHIP FOR 1 MONTH DUE TO CONSTANT ELECTRICAL PROBLEMS- THE DASHBOARD WOULD GO DARK, THE CAR WOULD LOSE POWER, THE MAPS WOULD SHUT DOWN, ETC. THAT DEALERSHIP REPOSITIONED THE FAULTY WIRES. IN DECEMBER OF 2022 THE AIRBAG LIGHT CAME ON. I HAD TO TAKE IT TO ANOTHER DEALERSHIP AND LEARNED BECAUSE OF A FAILED CONNECTION TO THE 2ND ROW SEATBELT, MY CAR HAD NO OPERATIONAL AIRBAGS. I PAID APPROXIMATELY $1200.00 FOR THE REPAIR. FORD IS REFUSING TO REIMBURSE ME FOR THE COSTS I INCURRED DUE TO THEIR DESIGN FLAW. THE SAFETY OF EVERYONE WHO HAS RIDDEN IN THAT CAR WAS PUT AT RISK- IF THERE WAS A COLLISION, THERE WOULD BE NO PROTECTION. THE AIRBAG LIGHT WAS NOT ON WHEN THE WIRES WERE FIRST REPOSITIONED. MY SON DROVE THE CAR FROM CT TO FLORIDA AND WAS UNAWARE OF THAT THE LIGHT MEANT THAT ALL AIRBAG S WERE DISABLED. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 1/7/2023 | 2015 | THE CONTACT OWNS A 2015 FORD EXPLORER. THE CONTACT STATED WHILE STARTING THE VEHICLE, THE CONTACT SEAT BELT WARNING LIGHT WAS ILLUMINATED. THE CONTACT HAD TAKEN THE VEHICLE TO A LOCAL DEALER, WHERE IT WAS DIAGNOSED AND DETERMINED THAT THE SEAT BELT SENSOR NEEDED TO BE REPLACED. THE VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS INFORMED OF THE FAILURE AND INFORMED THE CONTACT THAT THE VEHICLE HAD EXCEEDED THE WARRANTY EXTENSION AND WAS NO LONGER COVERED. THE CONTACT RESEARCHED ONLINE AND RELATED THE FAILURE TO FORD CUSTOMER SATISFACTION PROGRAM: 21B11 (SEAT BELTS). THE FAILURE MILEAGE WAS 64,710. |
| 1/11/2023 | 2017 | 2017 FORD EXPLORER. CONSUMER STATED THAT THE SEATBELT BUCKLE WOULD NOT RELEASE. THE CONSUMER STATED TOOK THE VEHICLE TO BE REPAIRED THE DEALER LOST THE STEP PANEL AND ALSO NEED ADDITIONAL PARTS TO INSTALL THE NEW SEATBELT. |
| 1/14/2023 | 2016 | ON SEPTEMBER 11TH, 2019 WE HAD TO REPLACE (WHILE STILL UNDER WARRANTY) THE SEAT BELT BUCKLE ASSEMBLY ON THE REAR (MIDDLE SEAT, DRIVER SIDE) BECAUSE IT WOULD NO LONGER BUCKLE. ON JANUARY 23RD, 2023 WE RETURNED TO OUR LOCAL FORD DEALERSHIP BECAUSE THE OTHER REAR (MIDDLE SEAT, PASSENGER SIDE) SEAT BELT BUCKLE ASSEMBLY WOULD NO LONGER BUCKLE. UPON INSPECTION BY THE DEALERSHIP'S TRIM TECHNICIANS, IT WAS DISCOVERED THAT THE OTHER PREVIOUSLY REPLACED SEAT BELT BUCKLE ASSEMBLY IS ALSO ABOUT TO FAIL AGAIN AS WELL. SO I NOW |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | HAVE 1 COMPLETELY BROKEN SEAT BELT BUCKLE ASSEMBLY AND A 2ND ONE SEAT BELT BUCKLE ASSEMBLY THAT IS ABOUT TO FAIL IN THE MIDDLE ROW OF MY EXPLORER WHERE MY CHILDREN ARE PASSENGERS. THIS IS A REPEAT SAFETY DEFICIENCY AND WE ARE VERY UPSET ABOUT IT. WE WERE UNDER THE IMPRESSION OUR CHILDREN WERE SAFE IN THEIR SEATBELTS IN THE BACK SEATS OF OUR CAR. WE CONTACTED FORD MOTOR COMPANY ABOUT THIS SAFETY DEFICIENCY AND WERE ASSIGNED THE FOLLOWING CASE # OF [XXX]. WE WERE ALSO ASSIGNED THE FOLLOWING INDIVIDUAL TO HANDLE THE FINANCIAL COST OF THE REQUIRED REPAIRS: CXS [XXX] CUSTOMER EXPERIENCE SPECIALIST, SUV TEAM [XXX] \|WWW.FORD.COM OFFICE: [XXX] EXT.[XXX] OUR ASSISTANT SERVICE MANAGER AT AUTONATION FORD SENT ALL THE REQUESTED REPAIR INFORMATION AND PICTURES REQUESTED BY [XXX] AT FORD. OUR ASSISTANT SERVICE MANAGER AT AUTONATION FORD IS: [XXX] PHONE: [XXX] UNFORTUNATELY TODAY, WE RECEIVED A PHONE CALL FROM [XXX] AT FORD INDICATING THAT WE DO NOT QUALIFY TO HAVE THE REPAIRS OF THE SEATBELTS COVERED BY FORD. WE FIND THIS COMPLETELY UNACCEPTABLE THAT FORD IS NOT GOING TO FIX A SAFETY ITEM IN A CAR THAT IS LESS THAN 10 YEARS OLD AND IN EXCELLENT CONDITION. THIS IS THE SECOND TIME THESE ITEMS HAVE FAILED. NOT ONLY ARE THE BELTS FAILING TO CONNECT, BUT THEY ARE ALSO FRAYING. WE DO NOT BELIEVE WE SHOULD HAVE TO PAY FOR THIS VITAL SAFETY EQUIPMENT TO BE REPAIRED. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6). |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 1/15/2023 | 2016 | THE CONTACT OWNS A 2016 FORD EXPLORER. THE CONTACT STATED THAT THE MIDDLE ROW PASSENGERS SIDE SEAT BELT MALFUNCTIONED AND COULD NO LONGER BE RETRACTED. THE VEHICLE WAS TAKEN TO THE LOCAL MECHANIC WHO DIAGNOSED THAT THE SEAT BELT ASSEMBLY NEEDED TO BE REPLACED. THE VEHICLE WAS NOT YET REPAIRED. THE LOCAL DEALER AND MANUFACTURER WERE NOTIFIED OF THE FAILURE AND STATED THAT THE PART WAS ON BACKORDER. THE FAILURE MILEAGE WAS 85,000. |
| 1/18/2023 | 2018 | FOR THE 2ND ROW PASSENGER SEAT THE CLIP HAS BROKEN. YOU CAN NOT SAFELY HAVE A PASSENGER IN THE SEAT. I HAVE BEEN TRYING FOR OVER A YEAR TO GET THE PART. I WAS TOLD BY THE LAST PERSON WHO LOOKED AT IT THAT IT IS SPECIFIC TO THE AIR BAG SEAT BELTS IN THE SECOND ROW. I ALSO HAD A COWORKER WHO HAD THE EXACT SAME PART BREAK. FOR THE FIRST 6 MONTHS I TRIED TO GET THIS RESOLVED THEY WERE SO FAR BACKORDERED THAT THE DEALERSHIP WOULD NOT EVEN TAKE MY NAME TO GET ON THE LIST FOR THE BACK ORDER. THEY FINALLY TOOK MY NAME LAST MONTH, BUT ITS STILL ON BACK ORDER. IT HAS NOW BEEN OVER A YEAR WITH A SEAT UNALBE TO BE USED FOR A PASSENGER. I AM TRYING TO FIGURE OUT HOW IF SO MANY PEOPLE ARE IN LINE FOR THIS PART THAT IT IS NOT A SAFETY RECALL ISSUE...ALSO WHY ARE THEY NOT JUST REPLACING THE ENTIRE SET UP AS THEY SEEM TO HAVE A VERY COMMON ISSUE GOING ON HERE. WHAT IF THAT WERE TO HAVE BROKEN DURING AN ACCIDENT. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 2/1/2023 | 2015 | THE CONTACT OWNS A 2015 FORD EXPLORER. THE CONTACT STATED THAT THE REAR PASSENGER'S SIDE SEAT BELT BUCKLE RETRACTOR WAS STUCK AND FAILED TO RELEASE AS NEEDED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED BY AN INDEPENDENT MECHANIC OR DEALER. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 68,000. |
| 5/23/2023 | 2015 | AIR BAG LIGHT COMES ON INTERMITTENTLY. CURRENT MILEAGE 62,094. NOTED 21 PRIOR COMPLAINTS ON YOUR SITE. BROUGHT TO DEALER WHO TOLD ME THE PROBLEM WAS WITH A WIRE HARNESS FAILURE. NONE OF THE SAFETY AIR BAGS WILL OPERATE/DEPLOY WHEN THIS LIGHT IS ON. A FAULTY HARNESS THAT HAD FAILED WILL PUT ME AND MY PASSENGERS IN SERIOUS JEOPARDY OF INJURY OR DEATH IN THE EVENT OF AN ACCIDENT. THIS DIAGNOSIS COST ME $149 ONLY TO FIND OUT IT WOULD COST HUNDREDS OF DOLLARS MORE TO HAVE THE PROBLEM FIXED. INTERNET RESEARCH REVEALS THIS PROBLEM WAS ADDRESSED IN A 2016 TECHNICAL BULLETIN 16-0001; CODE B141B. WE PURCHASED THIS VEHICLE AS A CERTIFIED PRE-OWNED VEHICLE AFTER FORD ISSUED THE TECHNICAL BULLETIN. NO MENTION OF FORD'S INTERNAL BULLETIN WAS MADE BY THE DEALER AT THE TIME OF MY PURCHASE. FORD HAS BEEN AWARE OF THIS PROBLEM FOR YEARS. ACCORDING TO THE DEALERSHIP TECHNICIAN THERE IS NO FORMAL RECALL TO HAVE THIS MANUFACTURING DEFECT CORRECTED BY FORD AT NO COST TO THE PURCHASER OF THE VEHICLE. DIDN'T FULLY FUNCTIONAL AIR BAGS COME AS PART OF MY CERTIFIED PRE-OWNED PURCHASE? I |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | EXPECT THE MANUFACTURER'S SAFETY EQUIPMENT TO BE FULLY FUNCTIONAL. PLEASE REVIEW 2015 EXPLORER OWNER'S MANUAL AS FOLLOWS: CHILD SAFETY (PAGES 18-37), SAFETY BELTS (PAGES 38-48) PERSONAL SAFETY SYSTEM (PAGE 49) AND SUPPLEMENTARY RESTRAINTS SYSTEM (PAGES 50-61) WITH PARTICULAR ATTENTION TO PAGE 49 BEARING IN MIND THAT NONE OF THESE SAFETY FEATURES WORK WHEN THE AIR BAG LIGHT IS ON. WHAT GOOD ARE SAFETY FEATURES THAT ARE DISABLED BY A MANUFACTURING DEFECT IN THE WIRING HARNESS? FORD HAS NOT ONLY DISAPPOINTED ITS CUSTOMERS, IT HAS PUT THEM IN SERIOUS JEOPARDY WHEN USING THEIR PRODUCT. YOUR RATING SYSTEM NOTES CRASH, FIRE, INJURIES AND DEATHS. DO NOT WAIT FOR A POSITIVE NOTATION IN ANY OF THESE CATEGORIES BEFORE YOU ACT ON SAFETY RECOMMENDATIONS, INCLUDING A MANDATED RECALL, WHICH IS YOUR PRIMARY TOOL FOR PREVENTING FUTURE CIVIL TRANSPORTATION ACCIDENTS. |
| 7/11/2023 | 2016 | THE SEAT BELT BUCKLE FOR THE SECOND ROW PASSENGER-SIDE BROKE, MAKING IT IMPOSSIBLE FOR THE SEAT BELT BUCKLE TO LOCK. FORD SAID THE PART WAS BACK ORDERED. WHEN THE PART ARRIVED AND THE CAR WAS BEING FIXED, WE RECEIVED A CALL FROM THE SERVICE MANAGER ADVISING THE SECOND ROW DRIVER-SIDE BUCKLE BROKE AS WELL. THIS SEEMS TO BE A RECURRING ISSUE. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 7/30/2023 | 2015 | THE CONTACT OWNS A 2015 FORD EXPLORER. THE CONTACT STATED THAT THE SEAT BELT AND AIR BAG WARNING LIGHTS WERE ILLUMINATED. THE VEHICLE WAS TAKEN TO THE DEALER TO BE DIAGNOSED AND THE CONTACT WAS INFORMED THAT THE SEAT BELT WIRING HARNESS LOCATED IN THE SECOND-ROW SEAT HAD FAILED. THE WIRING HARNESS WAS REPLACED; HOWEVER, THE FAILURE PERSISTED. THE CONTACT WAS INFORMED THAT THE SEAT BELT WIRING HARNESS NEEDED TO BE REPLACED; HOWEVER, THE PARTS WERE ON BACKORDER. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND REFERRED THE CONTACT TO THE NHTSA HOTLINE FOR ASSISTANCE. THE APPROXIMATE FAILURE MILEAGE WAS 65,000. |
| 8/2/2023 | 2015 | THE LEFT REAR SEAT BELT BUCKLE/RECEPTACLE BROKE IN EARLY 2023. FORD TOLD ME THE PART IS ON BACKORDER. EVERY TIME I HAVE CHECKED WITH FORD, THEY CONTINUE TO SAY THE PART IS ON BACKORDER. I CAN'T USE THE VEHICLE AS INTENDED WHILE FORD REFUSES TO SUPPLY THE SAFETY PARTS NECESSARY. |
| 9/7/2023 | 2014 | AIRBAG LIGHT CAME ON, HAD TESTED BY LOCAL MECHANIC, INFORMED LEFT REAR AIRBAG AND TO TAKE TO DEALER, DEALER CHARGED $252 TO DISAGNOSE AIR BAG IN LEFT REAR SHOULDER STRAP. SINCE ALREADY REPLACED WIRING HARNESSES UNDER TSB 16-0001 BACK ON 11/1/7/16 THOUGHT BEST TO CLEAN CONTACTS OF HARNESS CONNECTORS AND APPLY DIELECTRIC GREASE FOR AN EXTRA 1/2 LABOR FOR AN ADDTIONAL $99 BRINGING THE TOTAL TO OVER |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | $350. BOTH DEALER AND FORD REFUSED TO COVER THIS REPAIR. I AM VERY DISSAPOINTED. |
| 9/28/2023 | 2016 | CAR HAS INFLATABLE SEATBELT IN THE SECOND ROW BUCKET SEATS. I AM UNABLE TO FIND ANY CAR SEATS THAT ARE SAFE TO USE IN THIS VEHICLE ONCE YOU MOVE FROM TETHER POSITION HAVE VISITED LOCAL DEALERSHIP AND CALLED FORD FOR ASSISTANCE. NONE OF WHICH ARE ABLE TO ASSIST WITH THIS WHICH PUTS CHILDREN IN GREAT HARM AS NO CAR SEAT CAN BE SAFELY USED |
| 10/16/2023 | 2015 | THE CONTACT OWNS A 2015 FORD EXPLORER. THE CONTACT STATED THAT THE SECOND-ROW DRIVERS AND PASSENGER'S SIDE SEAT BELT BUCKLE COVERS HAD DETACHED, CAUSING THE AIR BAG WARNING LIGHT TO ILLUMINATE. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED BY AN INDEPENDENT MECHANIC OR DEALER. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE BUT PROVIDED NO ASSISTANCE. THE CONTACT RELATED THE FAILURE TO CUSTOMER SATISFACTION PROGRAM: 21B11 (2ND ROW INFLATABLE SEAT BELT); HOWEVER, THE VIN WAS NOT INCLUDED. THE FAILURE MILEAGE WAS APPROXIMATELY 125,000. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 10/18/2023 | 2014 | THE CONTACT OWNS A 2014 FORD EXPLORER. THE CONTACT STATED THAT THE SECOND-ROW PASSENGERS SIDE INFLATABLE SEAT BELT AND AIR BAG WARNING LIGHTS WERE ILLUMINATED. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE WIRING HARNESS NEEDED TO BE REPOSITIONED. THE VEHICLE WAS REPAIRED HOWEVER, THE FAILURE RECURRED. THE CONTACT STATED THAT THE SECOND-ROW DRIVERS AND PASSENGERS SIDE INFLATABLE SEAT BELT AND AIR BAG WARNING LIGHTS WERE ILLUMINATED. THE VEHICLE WAS TAKEN BACK TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE SECOND-ROW SEAT BELT CONNECTOR FAILED AND PRODUCED CODES: B141B, B140D, B141C. THE CONTACT WAS INFORMED THAT THE SECOND-ROW SEAT BELT WIRING HARNESS NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE CONTACT REFERENCED CUSTOMER SATISFACTION PROGRAM: 21B11. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND THE CONTACT WAS PROVIDED A CASE NUMBER AND ADVISED TO CONTACT THE NHTSA HOTLINE. THE FAILURE MILEAGE WAS APPROXIMATELY 157,000. |
| 10/27/2023 | 2016 | MIDDLE ROW, PASSENGER SIDE SEAT BELT BUCKLE IS BROKEN & WILL NOT LATCH. THIS IS WHERE MY 9YR OLD SITS & THERE IS NO REASON OR CAUSE FOR THIS TO BREAK. MY VEHICLE HAS THE INFLATABLE AIRBAG SEATBELTS ON THIS ROW. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 12/6/2023 | 2011 | THE AIRBAG WARNING LIGHT KEEPS COMING ON AFTER CONTINUED CHECKS AND FIXES. THE DEALERSHIP ZIP TIED CONNECTOR C211 AND THE LIGHT WENT OFF FOR A BIT THEN CAME BACK ON, THE SEAT BELT HAS BEEN REPLACED BUT THE LIGHT CAME BACK ON, AND ALL OTHER COMPONENTS HAVE BEEN CHECKED BUT NO MATTER WHAT THE FIX THE LIGHT STAYS ON. THIS IS AN ISSUE MANY PEOPLE HAVE AND FORD SHOULD BE RESPONSIBLE FOR FIXING IT. |
| 1/1/2024 | 2015 | THE CONTACT OWNS A 2015 FORD EXPLORER. THE CONTACT STATED THAT THERE WAS AN ABNORMAL GRINDING NOISE DETECTED WHILE MAKING A TURN. THERE WAS A CRUNCHING NOISE DETECTED WHILE ENTERING THE DRIVEWAY. THE CONTACT STATED THAT THE PASSENGER'S FRONT SEAT WAS NOT MOVING. THE DRIVERS SIDE REAR INFLATOR SEAT BELT FAILED TO LATCH. THE REAR SEAT BELT WARNING LIGHT WAS ILLUMINATED. THE VEHICLE WAS TAKEN TO THE LOCAL DEALER, WHO INFORMED THE CONTACT THE SEAT BELT BUCKLE NEEDED TO BE REPLACED. THE TRACK ON THE SEAT NEEDED TO BE REPLACED. THE DEALER WAS UNABLE TO DETERMINE THE CAUSE OF THE STEERING FAILURE. THE VEHICLE WAS NOT REPAIRED. WHILE DRIVING AT UNKNOWN SPEEDS, THE STEERING WHEEL SEIZED. WHILE MAKING A TURN, THE DRIVER HAD TO PULL THE STEERING WHEEL TO CORRECT THE STEERING. THE STEERING POWER ASSIST FAULT MESSAGE WAS DISPLAYED. THE VEHICLE WAS TAKEN TO AN INDEPENDENT MECHANIC, WHO INFORMED THE CONTACT THAT THE SEAT FAILURE WAS DUE TO THE MOTOR. THE MANUFACTURER WAS NOT |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | CONTACTED. THE FAILURE MILEAGE WAS APPROXIMATELY 126,000. |
| 2/1/2024 | 2014 | MY STEERING WHEEL IS LIKE USING MANUAL STEERING, IT IS VERY HARD TO TURN IT SEEMS TO GET STUCK IN CERTAIN POSITIONS, EASIER IN ANOTHER SPOT WHEN TURNING, THEN GETS STUCK AGAIN. IT IS VERY HARD TO TURN, NO LIGHTS ON THE DASHBOARD, NO ERROR CODES. THIS IS A HUGE SAFETY CONCERN IF I AM DRIVING AND CAN NO LONGER STEER MY VEHICLE SAFELY. I SEE SO MANY OTHER COMPLAINING ABOUT THIS PROBLEM WITH 2014, WHY IS THERE NO RECALL? THIS IS PUTTING PEOPLE AT RISK OR CRASHING WHICH COULD CAUSE FATALITY! SECONDLY, MY BACK SEAT BELT DOESN'T WORK IT WILL NOT LATCH ANY MORE, AND I HAVE SEEN SO MANY COMPLAINTS ABOUT THAT AS WELL, BUT AGAIN FORD WILL NOT RECALL IT. SO I HAVE A SEAT IN MY VEHICLE THAT CANNOT BE USED BY ANYONE AS IT IS A SAFETY CONCERN IF THERE WAS AN ACCIDENT. |
| 2/18/2024 | 2014 | BOTH MIDDLE SEAT, AIR BAG SEAT BELTS STOPPED WORKING. THE BUCKLE WILL NOT CLICK TO LOCK ON EITHER SEAT BELT. THE DASHBOARD SHOWS AN AIRBAG LIGHT THAT JUST STAYS ON. THE CAR HAS NOT BEEN HIT OR BEEN IN ANY ACCIDENT AT ALL. I UNDERSTAND THERE IS A RECALL OR SOON TO BE A RECALL ON OTHER FORD EXPLORER 2014 VEHICLES, WHERE THE WIRING IS FAULTY FOR THESE AIR BAG SEAT BELTS. THE DEALER SAID MINE IS NOT INCLUDED. IT IS A SAFETY FAILURE. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 3/1/2024 | 2015 | 2ND ROW SEAT BELTS, OUTER RIGHT AND LEFT HAVE BROKEN BUCKLE. PART IS ON NATIONAL BACK ORDER AND IS NOT AVAILABLE. FORD DOES NOT HAVE A RECALL OR TSB ACTIVE ON THIS PROBLEM. PARTS GUY SAID THIS IS A COMMON PROBLEM, REFLECTS ON WHY PART IS ON BACK ORDER AND NOT AVAILABLE. CANT PUT KIDS IN VEHICLE DUE TO DEFECTIVE SEAT BELT. NO HAVE NOT CONTACTED INSURANCE OR CONTACTED POLICE, I AM A CERTIFIED STATE SAFETY INSPECTOR IN VIRGINIA AND A FLEET MECHANIC FOR PWC GOV [XXX] ,-. SEAT BELT BROKE AND WILL NOT LOCK BUCKLE IN PLACE. LEFT SIDE IS STARTING TO NOT LATCHING ANYMORE ALSO. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6) |
| 3/5/2024 | 2017 | IN A 2017 FORD EXPLORER PLATINUM THE PASSENGER 2ND ROW SEATBELT MALFUNCTIONS AND WILL NOT EXTEND. IT IS AVAILABLE FOR INSPECTION. THE SEATBELT FIRST BINDED (OR BECAME STUCK) MARCH 2024 AND TAKEN INTO FORD DEALERSHIP AND THEY REPORTED "UPON INSPECTION OF SEAT BELT, FOUND TO BE INTERNALLY BINDING AT THE RETRACTOR. REQUIRES REPLACEMENT." THEY ORDERED REPLACEMENT BUT SAID IT WAS ON BACKORDER, IT TOOK MONTHS BEFORE REPLACEMENT ARRIVED. WHEN REPLACEMENT ARRIVED IT WAS TAKEN IN TO FORD DEALERSHIP TO REPLACE BUT FORD REPORTED "REPLACED RR SEAT BELT RETRACTOR. AFTER INSTALLATION, FOUND A FAULTY PART WAS SENT. REINSTALLED OLD SEAT BELT AND ORDERED NEW BELT." RETURNED TO FORD DEALERSHIP FOR THE SECOND REPLACEMENT SEATBELT AND IT WAS INSTALLED |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | AND AT TIME WAS WORKING. NOW FOR THE THIRD TIME (DURING THE NEXT SEVERAL MONTHS AFTER THE THIRD SEATBELT IS INSTALLED) IT HAS GOTTEN STUCK (BINDED) AND UNABLE TO EXTEND SEVERAL TIMES AND UNUSABLE. RESULTING IN HAVING TO RELOCATE THE PASSENGER TO ANOTHER SEAT. SAFETY CONCERN: USERS MAY NOT HAVE A WORKING AND RELIABLE SEATBELT. PASSENGER MAY NOT BE RESTRAINED WITH SEATBELT OR IT MAY FORCE A CHILD FROM SITTING IN THE REAR SEAT TO RELOCATE TO A MORE DANGEROUS FRONT SEAT DUE TO LACK OF WORKING SEATBELTS. THIS SEEMS TO SHOW THAT THE SEATBELT MECHANISM MUST BE DEFECTIVE IN THAT 3 SEATBELTS ARE HAVING SIMILAR PROBLEM IN A 6-12 MONTH WINDOW. HAVE ALSO SEEN SIMILAR REPORTS OF THIS ISSUE ON REDDIT. |
| 3/16/2024 | 2018 | AIR BAG STYLE SEAT BELT HAS BROKEN TWICE AND WONT ALLOW SEAT BELT TO LATCH AFTER IT BREAKS. BROKE WHILE SEAT BELT WAS IN USE AND DRIVING DOWN THE HIGHWAY. WHEN REPLACING THE BUCKLE I FOUND THAT THE FRAME PIECE ON THE SEAT WAS BROKE AND MOVED WHEN TRYING TO TIGHTEN THE BUCKLE. THE BUCKLE HAS BEEN UNAVAILABLE ONLINE THROUGH MULTIPLE VENDORS AND FINALLY FOUND ONE IN STOCK. |
| 5/6/2024 | 2016 | THE CONTACT OWNS A 2016 FORD EXPLORER. THE CONTACT STATED THAT WHILE THE VEHICLE WAS STARTED, THE AIR BAG WARNING LIGHT ILLUMINATED. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THE SEAT BELT RETRACTOR WAS FAULTY AND NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | OF THE FAILURE. THE FAILURE MILEAGE WAS 106,000. |
| 5/20/2024 | 2014 | I FINALLY WAS ABLE TO GET AN APPOINTMENT FOR MY TOE LINKS. I ALSO RECALL GETTING THE RUN AROUND ON A SEAT BELT NOTIFICATION FOR ISSUES WITH THE SECOND ROW FROM THE DEALERSHIP WHEN I ORIGINALLY CALLED. SINCE THE VEHICLE WAS GOING TO BE IN THE DEALER I BROUGHT BACK UP THE SEAT BELT NOTIFICATION. BOTH THE DEALERSHIP AND FORD CUSTOMER SERVICE CLAIM THERE IS NO SUCH RECALL OR CUSTOMER SATISFACTION PROGRAM. I CANNOT BELIEVE A CRITICAL SAFETY PRODUCT THEY HAVE NO RECORD OF OR THAT SUCH A SAFETY PROGRAM WOULD EXPIRE. HELP! |
| 6/1/2024 | 2015 | THE PASSENGER SEAT BELT (BEHIND THE DRIVER) HAS LOCKED UP AND WE ARE UNABLE TO LOCK THE SEAT BELT IN PLACE. IT LOCKED UP FROM THE TOP SIDE - NOT THE BOTTOM SIDE. SINCE IT IS LOCKED UP, IT WILL NOT ALLOW ANYONE TO SIT IN THE SEAT SINCE IT CAN NOT BE LOCKED IN PLACE. DUE TO THE ELECTRONICS IN THE SEAT BELT, A BODY SHOP OWNER ADVISED WE CONTACT FORD DIRECTLY. THERE ARE NO RECALLS ON THIS ISSUE AND WE WERE ADVISED FROM FORD TO REPORT THIS TO THE NATIONAL HIGHWAY SAFETY TRAFFIC DIVISION. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 7/15/2024 | 2015 | THE INFLATABLE SEAT BELTS ON THE MIDDLE ROW OF 2015 EXPLORER SPORT HAVE BROKEN. THE BUCKLE COMPONENT ON THE R PASSENGER SIDE COMPLETELY LOCKED INTO PLACE WITH A CHILD BUCKLED INTO IT, AND THE CHILD HAD TO SQUIRM AND BE PULLED OUT OF THE BELT. IT IS LOCKED INTO THE BUCKLE. THE L DRIVER SIDE BUCKLE IS CRACKED APART AND CAUSING THE SAME ISSUE. I AM UNABLE TO TRANSPORT MY FAMILY SAFELY WITH THE LACK OF THE USE OF THESE 2 SEAT BELTS. I HAVE TAKEN THIS TO A INDEPENDENT SERVICE CENTER TO BE CHECKED/FIXED AS FORD DEALERSHIP COULDN'T SERVICE MY VEHICLE FOR 6 WKS FROM NOW, AND INDEPENDENT SERVICE COMPANY HAS TOLD ME THAT THE PART IS CONSISTENTLY AN ISSUE AND IS CONSTANTLY ON BACK ORDER. I HAVE BEEN TOLD THERE IS NO RELEASE DATE FOR WHEN PART WILL BE AVAILABLE. I FILED A COMPLAINT WITH FORD CUSTOMER SERVICE AND WAS TOLD THERE IS NOTHING THEY CAN DO TO HELP. NO WARNING, NO ALERTS - THIS JUST HAPPENED ON A HOT DAY WITH KIDS IN MY CAR UNABLE TO GET OUT OF A SEATBELT. I CAN NOT USE A VEHICLE BECAUSE OF LACK OF SEATBELTS. |
| 9/27/2024 | 2014 | THE CONTACT OWNS A 2014 FORD EXPLORER. THE CONTACT STATED WHILE DRIVING AT APPROXIMATELY 35 MPH, THE AIR BAG WARNING LIGHT WAS BLINKING OFF AND ON. THE CONTACT HAD TAKEN THE VEHICLE TO AN INDEPENDENT MECHANIC AND WAS INFORMED THAT THE VEHICLE NEEDED TO BE TAKEN TO A DEALER FOR ASSISTANCE. THE CONTACT STATED THAT THE DEALER DIAGNOSED THE VEHICLE AND DETERMINED THAT THE SECOND-ROW SEAT BELT HARNESSES HAD AN ELECTRICAL ISSUE WHICH |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | WAS PREVENTING THE AIR BAGS FROM FUNCTIONING AS NEEDED IN THE REAR SEAT HARNESSES AND THE PASSENGER AND DRIVER'S FRONTAL AIR BAGS. THE DEALER REFERENCED TECHNICAL SERVICE BULLETIN NUMBER: 16-0001 AS A POSSIBLE FIX TO REPAIR THE VEHICLE. THE CONTACT WAS PROVIDED AN ESTIMATE FOR THE REPAIR BUT DECLINED TO PAY FOR THE REPAIR. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS INFORMED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 50,000. |
| 9/30/2024 | 2017 | THE CONTACT OWNS A 2017 FORD EXPLORER. THE CONTACT STATED WHILE DRIVING AT VARIOUS SPEEDS, THE AIR BAG WARNING LIGHT ILLUMINATED. THE CONTACT STATED THAT THE AIR BAG WARNING LIGHT INTERMITTENTLY ILLUMINATED WHILE DRIVING AT VARIOUS SPEEDS. THE VEHICLE WAS TAKEN TO THE DEALER AND WAS DIAGNOSED WITH AIR BAG LIGHT ROW #2 INFLATABLE FOUND ON HIGHER WIRE CIRCUIT INSTALLED, AND THE WAS FUSE REPLACED. ADDITIONALLY, ROW #2 BUCKLE, REAR CENTER ROW PASSENGERS SEAT, REAR DRIVER SEAT WOULD NOT BUCKLE, AND THAT THE PASSENGER SEAT BUCKLE WAS INTERNALLY FRACTURED, AND THE BUCKLE ASSEMBLY NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE DEALER INFORMED THE CONTACT THAT THE PARTS WERE ON BACKORDER. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 104,000. |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| 11/15/2024 | 2017 | THE CONTACT OWNS A 2017 FORD EXPLORER. THE CONTACT STATED THAT WHILE ATTEMPTING TO USE THE 2ND ROW SEAT BELTS, AFTER FURTHER INSPECTION, THE 2ND ROW DRIVERS SIDE SEAT BELT BUCKLE REMAINED LATCHED AND FAILED TO RELEASE FROM THE BUCKLE AND THE 2ND ROW PASSENGER SIDE SEAT BELT FAILED TO LATCH SECURELY AS INTENDED. THE VEHICLE WAS TAKEN TO A LOCAL DEALER; HOWEVER, PARTS WERE NOT YET AVAILABLE TO REPAIR THE VEHICLE, AND THE WARRANTY WAS NOT VALID. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 85,000. |
| 12/19/2024 | 2016 | THE PROBLEM REMEDIED BY TSB 21B11-S2 DID NOT OCCUR IN MY VEHICLE WHILE THE TSB WAS IN EFFECT. IT HAS NOW SURFACED |
| 1/20/2025 | 2012 | THE CONTACT OWNS A 2012 FORD EXPLORER. THE CONTACT STATED THAT WHILE DRIVING 25 MPH, HER GRANDSON WHO WAS OCCUPYING THE SECOND-ROW DRIVER'S SIDE SEAT INFORMED THE CONTACT THAT THE SEAT BELT HAD FAILED TO REMAIN BUCKLED. THE CONTACT PULLED OVER TO THE SIDE OF THE ROAD AND MOVED HER GRANDSON TO THE SECOND-ROW MIDDLE SEAT. THE CONTACT STATED THAT THE PLASTIC ON THE SECOND-ROW DRIVER'S SIDE SEAT BELT CLIP WAS FRACTURED AND HAD DETACHED, WHICH CAUSED THE SEAT BELT TO NOT BUCKLE AS NEEDED. THE CONTACT ALSO STATED THAT THE PLASTIC ON THE SECOND-ROW PASSENGER'S SIDE SEAT BELT CLIP WAS FRACTURED, BUT THE SEAT BELT WAS ABLE TO BE BUCKLED. THE LOCAL DEALER WAS NOTIFIED OF THE FAILURE AND REFERRED THE CONTACT TO THE |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | MANUFACTURER. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND ASSISTED THE CONTACT IN SCHEDULING AN APPOINTMENT WITH ANOTHER DEALER. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. ADDITIONALLY, THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 24V031000 (STRUCTURE); HOWEVER, THE PART TO DO THE RECALL REPAIR WAS NOT YET AVAILABLE. THE CONTACT STATED THAT THE PASSENGER'S SIDE AND DRIVER'S SIDE WINDSHIELD EXTERIOR A-PILLAR TRIMS HAD FRACTURED AND HAD PARTIALLY SEPARATED FROM THE VEHICLE. THE LOCAL DEALER WAS CONTACTED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE CONTACT STATED THAT MANUFACTURER HAD EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 97,000. VIN TOOL CONFIRMS PARTS NOT AVAILABLE. |
| 3/24/2025 | 2017 | PASSENGER SIDE/RIGHT SIDE SECOND ROW BUCKET SEAT = SEAT BELT BROKE. CALLED NUMEROUS DEALERSHIPS AND WERE ON A WAITING LIST OF OVER 350 THAT NEED A SEATBELT. NO SEAT BELTS AVAILABLE. UNABLE TO FIX PROBLEM. SAFETY ISSUE DUE TO NO SEAT BELT. NO WARNING LAMPS OR MESSAGES. |
| 6/6/2025 | 2015 | MY MIDDLE ROW AIRBAG SEAT BELTS ON BOTH SIDES ARE BROKE. YOU CAN NOT HOOK THEM INTO THE BOTTOM PIECE. ONE DOES NOT STAY HOOKED AND THE OTHER IS COMPLETELY APART. ( SEE ATTACHED PICTURE) IT IS A LAW TO WEAR SEATBELTS AND THIS IS HAS TO BE FIXED OR M FAMILY CAN NOT RIDE IN MY CAR. I WENT TO DEALERSHIP AND IT IS VERY EXPENSIVE TO |

| DATE | MODEL YEAR | DESCRIPTION |
|---|---|---|
| | | REPLACE. THIS SHOULD BE A RECALL ON THIS FOR IT IS A LAW TO WEAR SEATBELTS AND SEVERAL OTHER PEOPLE HAVE HAD THE SAME PROBLEM. |
| 8/26/2025 | 2014 | THE CONTACT OWNS A 2014 FORD EXPLORER. THE CONTACT STATED THAT AFTER ROUTINE MAINTENANCE AT A LOCAL INDEPENDENT MECHANIC, THE SECOND-ROW SEAT BELT WARNING LIGHT ILLUMINATED. IN ADDITION, THE CONTACT ATTEMPTED TO BUCKLE THE REAR SECOND-ROW DRIVERS SIDE PASSENGERS SEAT BELT; HOWEVER, THE WARNING LIGHT REMAINED ILLUMINATED. THE VEHICLE WAS TAKEN BACK TO THE SAME INDEPENDENT MECHANIC, WHERE THE VEHICLE WAS DIAGNOSED AND DTC: B141B-13; WAS RETRIEVED. THE LOCAL DEALER WAS NOT CONTACTED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. UPON FURTHER INVESTIGATION, THE CONTACT RELATED THE FAILURE TO THE CUSTOMER SATISFACTION PROGRAM: 21B11; HOWEVER, THE VIN WAS NOT INCLUDED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 124,000. |
| 12/8/2025 | 2015 | BOTH OF THE INFLATABLE SEAT BELTS IN THE BACK SEAT FAIL TO LATCH. HAVE BEEN CHECKED FOR DEBRIS. |

### B. Ford's Knowledge of the Second Row Seatbelt Defect

90. Ford has material and long-standing knowledge of the Second Row Seatbelt Defect. Upon information and belief, Ford, through (1) its own records of customers' complaints, (2) dealership repair records, (3) records from the NHTSA, (4) warranty and

post-warranty claims, (5) pre-sale durability testing and part sales, (6) a partial and unduly limited customer satisfaction campaign (and the seatbelt inspections related to that campaign), and (7) other various sources, must have been aware of the Second Row Seatbelt Defect.

91. By quietly instituting a change to the Workshop Manual, and a very limited customer satisfaction campaign (rather than a recall of all Class Vehicles), Ford sought to minimize and cover up the extent of the Second Row Seatbelt Defect. This campaign was improperly limited to the following vehicles and the following time frame (and did not even address the root cause):

> **September 10, 2016**
> **NHTSA ID Number:** 10109079
> **Manufacturer Communication Number:** SSM 46102
> **Components:** SEAT BELTS
> **Summary:** Some vehicles may have a concern where the safety belt retractor webbing does not extract from the stowed position or exhibits excessive pressure on the occupant during use. This may be due to a normal condition which happens when the seatbelt retracts at a high rate of speed. The Workshop Manual, Section 501-20A General Procedures has been updated with a locked seatbelt retractor releasing procedure.
> **Affected Ford Explorer Vehicles:** 2012-2017 Ford Explorer
>
> **January 21, 2022**
> **"SUBJECT: Customer Satisfaction Program 21B11**
> Certain 2014-2016 Model Year Explorer Vehicles 2nd Row Inflatable Seat Belt
> **PROGRAM TERMS**
> This program will be in effect from January 21, 2022 to January 21, 2023. There is no mileage limit for this program.
> **AFFECTED VEHICLES**
> **Vehicle Model Year Assembly Plant Build Dates**
> Explorer 2014 Chicago Plant Build February 18, 2013 through June 2, 2014
> Explorer 2015 Chicago Plant Build February 17, 2014 through May 4, 2015
> Explorer 2016 Chicago Plant Build September 19, 2014 through February 28, 2016"
>
> **February 8, 2022**
> **"SUBJECT: Customer Satisfaction Program 21B11 – Supplement #1**
> Certain 2014-2016 Model Year Explorer Vehicles 2nd Row Inflatable Seat Belt
> **PROGRAM TERMS**
> This program will be in effect from January 21, 2022 to January 21, 2023. There is no mileage limit for this program.
> **AFFECTED VEHICLES**
> **Vehicle Model Year Assembly Plant Build Dates**
> Explorer 2014 Chicago Plant Build February 18, 2013 through June 2, 2014
> Explorer 2015 Chicago Plant Build February 17, 2014 through May 4, 2015
> Explorer 2016 Chicago Plant Build September 19, 2014 through February 28, 2016"

**June 10, 2022**
**"SUBJECT: Customer Satisfaction Program 21B11 – Supplement #2**
Certain 2014-2016 Model Year Explorer Vehicles 2nd Row Inflatable Seat Belt
**PROGRAM TERMS**
This program will be in effect from January 21, 2022 to January 21, 2023. There is no mileage limit for this program.
**AFFECTED VEHICLES**
**Vehicle Model Year Assembly Plant Build Dates**
Explorer 2014 Chicago Plant Build February 18, 2013 through June 2, 2014
Explorer 2015 Chicago Plant Build February 17, 2014 through May 4, 2015
Explorer 2016 Chicago Plant Build September 19, 2014 through February 28, 2016"

92. Ford also routinely monitors the internet for complaints about its vehicles. Its customer relations department routinely monitors the internet for customer complaints and has retained the services of third parties to do the same. Further, the customer relations division regularly receives and responds to customer calls concerning, *inter alia*, product defects.

93. In addition to the NHTSA complaints described above, there is no shortage of discussion on well-traveled automobile websites about the Second Row Seatbelt Defect. These websites regularly host discussions and comments for other members of the public to review. Ford Explorer owners have made comments about the Ford Explorer seatbelts on several such sites such as the following:

- My ex sport has about 36,000 miles on it. I've owned it for 2 years since new. So far, we've had to replace both outbound inflatable belts due to them sticking and not being able to pill or extend them to put them on. To top things off, a black plastic cover broke off of the driver side belt and now that ones being replaced yet again. Part has been on order for over a week. I'm not impressed by these belts. The plastic cover seems incredibly cheap and poorly designed. Love the concept, not liking the

execution. Hope they figure things out and improve the design.[1] I've never had a seat belt problem before in any car. I'm about to have my third seat belt replaced in my ex sport. Not good.

- My child was trying to buckle her seatbelt (right seat, middle row) and the part that you insert the metal into snapped apart. HUGE safety issue. What if it broke during an accident. We were sitting still (car in park) in our driveway thankfully.[2] (2015 MY)
- 2nd row seat belts, outer right and left have broken buckle. Part is on national back order and is not available. Ford does not have a recall or TSB active on this problem. Parts guy said this is a common problem, reflects on why part is on back order and not available. Cant put kids in vehicle due to defective seat belt. No have not contacted insurance or contacted police, I am a certified State Safety Inspector in Virginia and a Fleet mechanic for PWC GOV [XXX],-. Seat belt broke and will not lock buckle in place. Left side is starting to not latching anymore also.[3] (2015 MY)
- First one "binded" and cost $1200 at Ford (labor and material) to replace. The replacement was backordered and took months. Then they installed the new one and said it was also defective. Finally got the third one and after just a month or two it started randomly getting stuck again (won't extend). Honestly, I didn't mind the first replacement it was 6-7 years old, but now I'm

[1] *Anyone else have problems with their second row inflatable seat belts? | Ford Explorer Forums*
[2] *2015 Ford Explorer Seat Belts Problems | CarComplaints.com*
[3] *2015 Ford Explorer Seat Belts Problems | CarComplaints.com*

> scared that we go on a road trip and can't get back or have to drive people who cannot buckle up. Or even if we have to relocate a child from back seat to front seat seems more dangerous too. Also who has the time for all the back and forth at the dealership for repairs and ubers back and forth to work and being without a vehicle.[4] (2017 MY)

94. Ford also should have known about the Second Row Seatbelt System Defect because of the sheer number of reports about seatbelt failures in the Class Vehicles. For instance, Defendant's customer relations department, which interacts with Ford-authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, has received numerous reports of the Second Row Seatbelt Defect. Customer relations also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

95. Ford's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles. Ford dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Ford with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken parts in case Ford later determines to audit the dealership or otherwise verify the warranty repair. For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to Ford because it will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

96. Rather than recalling the Class Vehicle and repairing or replacing the defective Second Row Seatbelt System, Ford has instead chosen to conduct under-the-

---

[4] *Filed an NHTSA safety complaint - I'm on my 2017 Ford Explorer 3rd seatbelt in 12 months and it's starting to fail again : r/Ford*

radar Technical Service Bulletins (TSB) and Customer Satisfaction Programs (CSP), which are issued by Ford to its Ford dealerships, but not disclosed directly to the public.

97. With regard to the airbag warning light, Ford has issued the following TSBs and CSP, beginning in 2012:

a. TSB 12-5-11: Ford identified the issue as "Some 2011-2012 Explorer vehicles built on or before 2/5/2012 may exhibit an intermittent Air Bag Warning Indicator with diagnostic trouble codes (DTCs) B1212 and/or B1213. The solution was to "Apply Motorcraft® Electrical Grease to the female pins of connector C310A (pins 11 GN, 12 VT-GN, 17 GN, and 18 BN-BU), C210 (pins 27 GY and 32 VT-GN) and C211 (pins 52 GN and 54 BN-BU).

b. TSB 15-0113: Ford identified the issue as "Some 2014-2016 Explorer vehicles equipped with second row inflatable seat belts may exhibit an air bag warning light illuminated with DTC B141B and/or B141C." The solution was to replace the terminals with new terminal and wiring assemblies in the second row seat.

c. TSB 16-0001 (Replaced TSB 15-0113): The solution appears to have been modified to replacing the wiring assemblies but not the terminals.

d. Customer Satisfaction Program 21B11: As discussed above, this CSP was launched for a single year from 1/21/2022 – 1/21/2023. The problem was described as "the air bag light may illuminate as a result of a worn or damaged connection to the rear inflatable seat belt connector." The service action stated that "Dealers are to inspect both second row seat wire harnesses for internal wire damage and reposition or replace as necessary. This service must be performed on all affected vehicles at no charge to the vehicle owner. On the driver side cut the wires on the female side of C3133 and replace them with

> the new wiring pigtail. Only replace the length of wire removed from the harness. Solder the new wire to the existing circuits. Refer to Section 5 of the Wiring Diagram for the solder-splicing method. On the male connector create a 15-20 mm (1/2-3/4") loop with the wiring harness and secure the harness to the connector using electrical tape. Make sure the wire loop does not contact the seat trim. Wrap the harness and connectors 3 times to provide harness stress relief and to prevent damage to the connector terminals when the seat is folded forward."

98. The above TSBs and CSP show that Ford was aware of the Second Row Seatbelt Defect, but rather than properly remedying the defect, Ford took half-measures and sought to limit the number of vehicles involved and avoided the expense of conducting a recall or replacing the defective seatbelt system in all Class Vehicles.

**C. Ford's Actions Harmed Consumers and Placed Public Safety at Risk**

99. Ford's acts and omissions have unnecessarily put the safety of Class Members and the public in jeopardy. Further, because of Ford's unfair, deceptive and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. Ford's unfair and deceptive trade practices were conducted in a manner giving rise to substantial aggravating circumstances.

100. Had Plaintiff and other Class Members known of the Second Row Seatbelt Defect at the time of purchase, they would not have bought the Class Vehicles or would have paid substantially less for them.

101. As a result of the Second Row Seatbelt System Defect and the monetary costs associated with attempting to repair it, Plaintiff and the Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Ford's conduct. Accordingly, Plaintiff brings this action to redress Ford's violations of the

consumer protection statutes of New York ("Deceptive Acts or Practices") and also seek recovery for Ford's breach of implied warranties, and unjust enrichment.

## VI TOLLING OF STATUTES OF LIMITATIONS

102. Any applicable statute(s) of limitations have been tolled by Ford's knowing and active concealment and denial of the facts alleged herein. Plaintiff and the Members of the Class could not have reasonably discovered the true, latent nature of the Second Row Seatbelt Defect until shortly before this class action litigation was commenced.

103. In addition, even after Plaintiff and Class Members contacted Ford and/or its authorized dealers for vehicle repairs concerning the Second Row Seatbelt Defect, they were routinely told by Ford and/or through its dealers that the Class Vehicles were not defective, as set forth above, when the true cause of the premature and catastrophic failure in the Class Vehicles is the defective design of the seatbelt system.

104. Ford was and remains under a continuing duty to disclose to Plaintiff and the Members of the Class the true character, quality, and nature of the Class Vehicles, that they will require costly repairs, pose safety concerns, and diminish the resale value of the Class Vehicles. As a result of Ford's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VII CLASS ALLEGATIONS

105. Plaintiffs bring this action on their own behalf, and on behalf of a New York class, a California class, an Illinois class, a Michigan Class, a New Jersey class, and a Pennsylvania class, pursuant to Federal Rules of Civil Procedure, Rules 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

> **New York Class:**
>
> All persons who purchased and currently own a Class Vehicle in the State of New York, and who use the Class Vehicle primarily for personal, family or household purposes.

**California Class:**

All persons who purchased and currently own a Class Vehicle in the State of California, and who use the Class Vehicle primarily for personal, family or household purposes.

**Illinois Class:**

All persons who purchased and currently own a Class Vehicle in the State of Illinois, and who use the Class Vehicle primarily for personal, family or household purposes.

**Michigan Class:**

All persons who purchased and currently own a Class Vehicle in the State of Michigan, and who use the Class Vehicle primarily for personal, family or household purposes.

**New Jersey Class:**

All persons who purchased and currently own a Class Vehicle in the State of New Jersey, and who use the Class Vehicle primarily for personal, family or household purposes.

**Pennsylvania Class:**

All persons who purchased and currently own a Class Vehicle in the Commonwealth/State of Pennsylvania, and who use the Class Vehicle primarily for personal, family or household purposes.

106. The New York, California, Illinois, Michigan, New Jersey, and Pennsylvania Classes shall be collectively referred to herein as the "Class." Excluded from the Class are Ford, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definitions based on discovery and further investigation.

107. **Numerosity:** Upon information and belief, the Class is so numerous that joinder of all Members is impracticable. While the exact number and identities of

individual Members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold in each of the states that are the subject of the Class.

108. **Existence and Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all Members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, whether:

- the Class Vehicles were sold with defects;
- Defendant knew of the defects but failed to disclose the problems and its consequences to their customers;
- a reasonable consumer would consider the defect or its consequences to be material;
- Ford should be required to disclose the existence of the defect; and
- Ford's conduct violates the statutes and laws asserted herein.

109. **Typicality:** All of Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased Class Vehicles with the seatbelt design, as did each member of the Class. Furthermore, Plaintiff and all Members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Ford's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class Members.

110. **Adequacy:** Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class that he seeks to represent, he has retained counsel who are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

111. **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and Members of the Class. The injury

suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Ford's conduct. It would be virtually impossible for Members of the Class individually to redress effectively the wrongs done to them. Even if the Members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, Members of the Class can be readily identified and notified based on, inter alia, Ford's vehicle identification numbers, warranty claims, registration records, and database of complaints.

112. Ford has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIII CAUSES OF ACTION

### A. Claims Brought on Behalf of the New York Class

### <u>FIRST CAUSE OF ACTION</u>

### <u>VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 349</u>

### (N.Y. Gen. Bus. Law § 349)

113. Plaintiff Jeffrey Terrell, on behalf of himself and the New York Class, realleges and incorporate by reference all paragraphs as though fully set forth herein, and claims as follows:

114. New York General Business Law ("G.B.L.") § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

115. Ford willfully failed to disclose and actively concealed the dangerous risks created by the Second Row Seatbelt Defect in the Class Vehicles. Accordingly, Ford

made untrue, deceptive or misleading representations of material facts and omitted and/or concealed material facts.

116. Ford engaged in deceptive acts or practices when it failed to disclose material information concerning the Class Vehicles. Ford deliberately withheld information about the defect in order to ensure that consumers would purchase its vehicles.

117. The Second Row Seatbelt Defect is material to Plaintiff and the Class. Had Plaintiff and the Class members known that the Class Vehicles had these serious safety defects, they would not have purchased the Class Vehicles.

118. Because Ford's deception decreases automobile safety for riders and the general public, its deception affects the public interest.

119. Ford's unlawful conduct constitutes unfair acts or practices that have the capacity to, and that do, deceive consumers and have a broad impact on consumers at large.

120. Plaintiffs and the Class suffered injury caused by Ford's failure to disclose material information. Plaintiffs and the Class overpaid for their vehicles and did not receive the benefit of their bargain. The value of the Class Vehicles has diminished as a result of the Second Row Seatbelt Defect, and Plaintiffs and the Class own vehicles that are not safe.

121. Pursuant to G.B.L. § 349, Plaintiff and the Class members are entitled to recover the greater of actual damages or $50. Because Ford acted willfully or knowingly, Plaintiffs and the Class are entitled to recover three times actual damages, up to $1,000.

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

## (N.Y. U.C.C. § 2-314)

122. Plaintiff Jeffrey Terrell, on behalf of himself and the New York Class, realleges and incorporate by reference all paragraphs as though fully set forth herein, and claims as follows:

123. Ford is and was at all relevant times a merchant with respect to motor vehicles within the meaning under N.Y. U.C.C. § 2-314.

124. Under N.Y. U.C.C. § 2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Class Vehicles from Ford.

125. The vehicles Ford sells are "things of danger," in that they are of such a character that when used for the purpose for which they are made they are likely to be a source of danger to several or many people if not properly designed and fashioned.

126. A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions.

127. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective due to the presence of the Second Row Seatbelt Defect.

128. Ford was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual letters and communications sent by Plaintiffs and the Class.

129. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

### B. Claims Brought on Behalf of the California Class

## THIRD CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA")

**(Cal. Civ. Code § 1750, *et seq.*)**

130. Plaintiff Mona Mayfield, on behalf of herself and the California Class, realleges and incorporate by reference all paragraphs as though fully set forth herein, and claims as follows:

131. Ford is a "person" as that term is defined in California Civil Code § 1761(c).

132. Plaintiff and the Class members are "consumers" as that term is defined in California Civil Code §1761(d).

133. Ford engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

a. (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

b. (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

c. (a)(9) Advertising goods and services with the intent not to sell them as advertised.

134. Ford's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

135. Ford knew that the Class Vehicles' second row inflatable seatbelt systems were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

136. Ford had the duty to Plaintiff and the Class members to disclose the Second Row Seatbelt Defect and the defective nature of the Class Vehicles because:

a. Ford was in a superior position to know the true state of facts about the Defect and associated repair costs in the Class Vehicles;

b. Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

c. Ford knew that Plaintiff and the Class members could not reasonably have been expected to learn about or discover the Defect and its associated repair costs; and

d. Ford actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiff and Class members that their second row inflatable seatbelt systems failed for reasons other than the Defect.

137. In failing to disclose the Defect and the associated safety risks and repair costs resulting from it, Ford has knowingly and intentionally concealed material facts and breached its duty to disclose.

138. The facts Ford concealed or did not disclose to Plaintiff and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lesser price. Had Plaintiff and the Class known the Class Vehicles were defective, they would not have purchased the Class Vehicles or would have paid less for them.

139. Plaintiff provided Ford with notice of its CLRA violations pursuant to California Civil Code § 1782(a) on March 3, 2026, and currently seeks injunctive relief. After the 30-day notice period expires, Plaintiff will amend this complaint to seek monetary damages under the CLRA.

140. Ford’s fraudulent and deceptive business practices proximately caused injuries to Plaintiff and the other Class members.

141. Therefore, Plaintiff and the other Class members seek equitable relief under the CLRA.

**FOURTH CAUSE OF ACTION**

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (UCL)**

**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

142. Plaintiff Mona Mayfield, on behalf of herself and the California Class, realleges and incorporate by reference all paragraphs as though fully set forth herein, and claims as follows:

143. The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

144. Ford has engaged in unfair competition and unfair, unlawful, or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and other Class members that the Class Vehicles suffer from the Second Row Seatbelt Defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Ford should have disclosed this information because it was in a superior position to know the true facts related to the Defect, and Plaintiff and Class members could not have been reasonably expected to learn or discover these true facts.

145. The Second Row Seatbelt Defect constitutes a safety issue triggering Ford's duty to disclose.

146. By its acts and practices, Ford has deceived Plaintiff and is likely to have deceived the public. In failing to disclose the Defect and suppressing other material facts from Plaintiff and other Class members, Ford breached its duty to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the Class members. Ford's omissions and acts of concealment pertained to information material to Plaintiff and other Class members, as it would have been to all reasonable consumers.

147. The injuries Plaintiff and the Class members suffered greatly outweigh any potential countervailing benefit to consumers or to competition, and they are not injuries that Plaintiff and the Class members could or should have reasonably avoided.

148. Ford's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and California Commercial Code § 2313.

149. Plaintiff seeks to enjoin Ford from further unlawful, unfair, and/or fraudulent acts or practices, to obtain restitutionary disgorgement of all monies and revenues Ford has generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**FIFTH CAUSE OF ACTION**

**VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW**

**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**

150. Plaintiff Mona Mayfield, on behalf of herself and the California Class, realleges and incorporate by reference all paragraphs as though fully set forth herein, and claims as follows:

151. California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

152. Ford caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care Ford should have known to be untrue and misleading to consumers, including Plaintiff and other Class members.

153. Ford has violated section 17500 because its misrepresentations and omissions regarding the safety, reliability, and functionality of the Class Vehicles were material and likely to deceive a reasonable consumer.

154. Plaintiff and the other Class members have suffered injuries in fact, including the loss of money or property, resulting from Ford's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and the other Class members relied on Ford's misrepresentations and/or omissions with respect to the Class Vehicles' safety and reliability. Ford's representations were untrue because it distributed the Class Vehicles with the Second Row Seatbelt Defect. Had Plaintiff and the other Class members known this, they would not have purchased or leased the Class Vehicles, or would not have paid as much for them. Accordingly, Plaintiff and the other Class members did not receive the benefit of their bargain.

155. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Ford's business. Ford's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

156. Plaintiff, individually and on behalf of the other Class members, requests that the Court enter such orders or judgments as may be necessary to enjoin Ford from continuing its unfair, unlawful, and/or deceptive practices, and restore to Plaintiff and the other Class members any money Ford acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## SIXTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS

**(Cal. Com. Code §§ 2313 and 10210)**

157. Plaintiff Mona Mayfield, on behalf of herself and the California Class, realleges and incorporate by reference all paragraphs as though fully set forth herein, and claims as follows:

158. Ford is and was at all relevant times a "merchant" with respect to motor vehicles under California Commercial Code §§ 2104(1) and 10103(c), and a "seller" of motor vehicles under § 2103(1)(d).

159. With respect to leases, Ford is and was at all relevant times a "lessor" of motor vehicles under California Commercial Code § 10103(a)(16).

160. The Class Vehicles are and were at all relevant times "goods" within the meaning of California Commercial Code §§ 2105(1) and 10103(a)(8).

161. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to California Commercial Code §§ 2314 and 10212.

162. Ford was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Ford knew or had reason to know of the specific use for which the Class Vehicles were purchased.

163. Ford provided Plaintiff and Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, inter alia, the Class Vehicles suffered from a Defect in the second row inflatable seatbelt system at the time of sale. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

164. Ford impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their second row inflatable seatbelt systems were manufactured, supplied, distributed, and/or sold by Ford were safe and reliable for the purpose for which they were installed; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

165. Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

166. Ford's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

**SEVENTH CAUSE OF ACTION**

**COMMON LAW FRAUDULENT CONCEALMENT**

**(Based on California Law)**

167. Plaintiff Mona Mayfield, on behalf of herself and the California Class, realleges and incorporate by reference all paragraphs as though fully set forth herein, and claims as follows:

168. Ford made material omissions concerning a presently existing or past fact. For example, Ford did not fully and truthfully disclose to its customers the true nature of the Second Row Seatbelt Defect, which was not readily discoverable until years later. As a result, Plaintiff and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Defect and all problems resulting from it.

169. Ford made these statements with knowledge of their falsity, intending that Plaintiff and the Class members rely on them.

170. As a result of these omissions and concealments, Plaintiff and the Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

171. Plaintiff and the Class members reasonably relied on these omissions and suffered damages as a result.

**C. Claims Brought on Behalf of the Illinois Class**

**EIGHTH CAUSE OF ACTION**

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICES ACT**

**(815 ILCS 505/1, et seq. and 720 ILCS 295/1a)**

172. Plaintiff David Rezabek, on behalf of himself and the Illinois Class, realleges and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

173. Ford is and was at all relevant times a "person" as that term is defined in 815 Illinois Compiled Statutes § 505/1(c).

174. Plaintiff and the Illinois Class are and were at all relevant times "consumers" as that term is defined in 815 Illinois Compiled Statutes § 505/1(e).

175. In Illinois, the "Consumer Fraud and Deceptive Business Practices Act," 815 ILCS § 505/1, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' . . . "

176. Plaintiff and the Illinois Class members were injured by Ford's deceptive misrepresentations, concealments and omissions and these misrepresentations, concealments and omissions were material and deceived Plaintiff and the Illinois Class members. Because Plaintiffs and the Illinois Class members relied on Ford's misrepresentations, concealments and omissions when purchasing and/or leasing Ford's Class Vehicles, they were injured at the time of purchase and/or lease.

177. Ford does business in Illinois, sells and distributes vehicles in Illinois, and engaged in deceptive acts and practices in connection with the sale and lease of the Class Vehicles in Illinois and elsewhere in the United States.

178. Ford knowingly failed to disclose, concealed, suppressed and/or omitted material facts regarding the Second Row Seatbelt Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff and the Illinois Class members. Ford actively suppressed the fact that the second row inflatable seatbelt systems in Class Vehicles are defective and present a safety hazard because of materials, workmanship and/or manufacturing defects.

179. Ford's unfair and deceptive trade practices were likely to deceive a reasonable consumer. Plaintiff and members of the Illinois Class had no reasonable way

to know that Class Vehicles contained second row inflatable seatbelt systems that were defective in materials, workmanship, and/or manufacture and posed a safety risk. Ford possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defect and associated safety risks, and any reasonable consumer would have relied on Ford's misrepresentations and omissions as Plaintiff and members of the Illinois Class did.

180. Ford had the duty to Plaintiff and the Illinois Class members to disclose the Second Row Seatbelt Defect and the defective nature of the Class Vehicles because:

181. Ford was in a superior position to know the true state of facts about the Second Row Seatbelt Defect and associated repair costs in the Class Vehicles;

182. Plaintiff and the Illinois Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

183. Ford knew that Plaintiff and the Illinois Class members could not reasonably have been expected to learn about or discover the Second Row Seatbelt Defect and its associated repair costs; and

184. Ford actively concealed the Second Row Seatbelt Defect, its causes, and resulting effects, by asserting to Plaintiff and Illinois Class members that their brake systems failed for reasons other than the Second Row Seatbelt Defect.

185. Ford's unfair and deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Second Row Seatbelt Defect were intended to mislead consumers and misled Plaintiff and Illinois Class members.

186. Ford's violations present a continuing risk to Plaintiffs as well as to the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

187. As a direct and proximate result of Ford's violations, Plaintiff and members of the Illinois Class have suffered actual damages and/or injury in fact, including, inter alia: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the defective

second row seatbelt systems; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Second Row Seatbelt Defect.

188. Plaintiff and members of the Illinois Class seek actual damages against Ford in an amount to be determined at trial and statutory, treble, and/or punitive damages under the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiff and members of the Illinois Class also seek an order enjoining Ford's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the Illinois Consumer Fraud and Deceptive Business Practices Act.

189. Pursuant to 815 Illinois Compiled Statutes § 505/10a(d), Plaintiff will mail a copy of this complaint to the Illinois Attorney General.

**NINTH CAUSE OF ACTION**

**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

**(810 ILCS §§ 5/2-314 and 5/2A-212)**

190. Plaintiff David Rezabek, on behalf of himself and the Illinois Class, realleges and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

191. Ford is and was at all relevant times a "merchant" with respect to motor vehicles under 810 Illinois Compiled Statutes §§ 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under section 5/2-103(1)(d).

192. The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 Illinois Compiled Statutes §§ 5/2-105(1) and 5/2A-103(1)(h).

193. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Illinois Compiled Statutes §§ 28-2-314 and 28-12-212.

194. Ford was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Ford knew or had reason to know of the specific use for which the Class Vehicles were purchased.

195. Ford provided Plaintiff and the Illinois Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, inter alia, the Class Vehicles suffered from the Second Row Seatbelt Defect at the time of sale. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

196. Ford implied that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their second row inflatable seatbelt systems manufactured, supplied, distributed, and/or sold by Ford were safe and reliable for the purpose for which they were installed; and (ii) a warranty that the Class Vehicles would be fit for their intended use.

197. Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the Illinois Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

198. Ford's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

199. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiff and the other Illinois Class members have been damaged in an amount to be proven at trial.

## TENTH CAUSE OF ACTION

## FRAUD BY CONCEALMENT

**(Based on Illinois Law)**

200. Plaintiff David Rezabek, on behalf of himself and the Illinois Class, realleges and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

201. Ford made material omissions concerning a presently existing or past fact in that, for example, Ford did not fully and truthfully disclose to its customers the true nature of the Second Row Seatbelt Defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

202. Ford was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

203. In addition, Ford had a duty to disclose these omitted material facts because they were known and/or accessible only to Ford who had superior knowledge and access to the facts, and Ford knew they were not known to or reasonably discoverable by Plaintiff and the Illinois Class members. These omitted facts were material because they directly impact the safety of the Class Vehicles.

204. Ford was in exclusive control of the material facts and such facts were not known to the public or the Illinois Class members. Ford also possessed exclusive knowledge of the defects rendering Class Vehicles inherently more dangerous and unreliable than similar vehicles.

205. Ford actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Illinois Class members to purchase the

Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

206. Plaintiffs and the Illinois Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the Illinois Class members were justified.

207. Plaintiffs and the Illinois Class members reasonably relied on these omissions and suffered damages as a result.

208. As a result of these omissions and concealments, Plaintiffs and the Illinois Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

209. As a result of the concealment and/or suppression of the facts, Plaintiff and the Illinois Class members sustained damage. Plaintiff and the Illinois Class members reserve their right to elect either to (a) rescind their purchase or lease of the Class Vehicles and obtain restitution or (b) affirm their purchase or lease of the Class Vehicles and recover damages.

210. As a result of these omissions and concealments, Plaintiff and the Illinois Class members incurred damages including loss of intrinsic value and out-of-pocket costs related to repair of the systems.

**ELEVENTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(Based on Illinois Law)**

211. Plaintiff David Rezabek, on behalf of himself and the Illinois Class, realleges and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

212. As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design and/or manufacturing defect of their vehicles and the concealment of the defect, Ford charged a higher price for their vehicles than the

vehicles' true value and Ford obtained monies which rightfully belong to Plaintiff and the Illinois Class members.

213. Ford enjoyed the benefit of increased financial gains, to the detriment of Plaintiff and the Illinois Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

214. Plaintiff, therefore, seeks an order establishing Ford as a constructive trustee of the profits unjustly obtained, plus interest.

**D. Claims Brought on Behalf of the Michigan Class**

**TWELFTH CAUSE OF ACTION**

**VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT**

**(Mich. Comp. Laws § 445.903, *et seq.)***

215. Plaintiff Frank Beven, on behalf of himself and the Michigan Class, realleges and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

216. Plaintiff Beven and the Michigan Subclass members are "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

217. Ford is a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

218. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing

to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

219. Ford misrepresented the safety of the Class Vehicles after learning of the Defect with the intent that Plaintiff and the Michigan Class rely on those representations in their decisions regarding the purchase of the Class Vehicles.

220. Plaintiff and the Michigan Class did in fact rely on such representations in deciding to purchase his Class Vehicle.

221. Through those misleading and deceptive statements and false promises, Ford violated the Michigan Consumer Protection Act.

222. The Michigan Consumer Protection Act applies to Ford's transactions with Plaintiff and the Michigan Class because Ford carried out its deceptive scheme in Michigan and that scheme affected Plaintiff and the Michigan Class.

223. Ford also failed to advise NHTSA and the public regarding its knowledge about the Second Row Seatbelt Defect.

224. Plaintiff and the Michigan Class relied on Ford's silence as to known defects in connection with their decisions regarding the purchase of the Class Vehicles.

225. As a direct and proximate result of Ford's deceptive conduct and violation of the Michigan Consumer Protection Act, Plaintiff and the Michigan Class have sustained and will continue to sustain economic losses and other damages for which they are entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

## THIRTEENTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(Based on Michigan Law)**

226. Plaintiff Frank Beven, on behalf of himself and the Michigan Class, realleges and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

227. Ford impliedly warranted that the Class Vehicles were of good and merchantable quality and fit, and safe for their ordinary intended use—transporting the driver and passengers in reasonably safety during normal operation, and without unduly endangering them or members of the public. Ford breached the warranty by knowingly selling the Class Vehicles though they possessed dangerous defects.

228. As described herein, there were dangerous defects in the Class Vehicles manufactured, distributed, and/or sold by Ford, which Plaintiff and the Michigan Class purchased, including the Second Row Seatbelt Defect.

229. The Second Row Seatbelt Defect existed at the time the vehicles left Ford's manufacturing facilities and at the time the Plaintiff and Michigan Class members purchased their vehicles. Furthermore, because of the Second Row Seatbelt Defect, Plaintiff and the Michigan Class did not receive the benefit of their bargain and their vehicles have suffered a diminution in value.

230. As a direct and proximate result of Ford's breach of the implied warranty of merchantability, Plaintiff and the other Michigan Class members have been damaged in an amount to be proven at trial.

## FOURTEENTH CAUSE OF ACTION

## FRAUD BY CONCEALMENT

**(Based on Michigan Law)**

231. Plaintiff Frank Beven, on behalf of himself and the Michigan Class, realleges and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

232. As described herein, Ford made material omissions and affirmative misrepresentations regarding the Class Vehicles.

233. Ford knew these representations were false when made.

234. The vehicles purchased by Plaintiff and the Michigan Class were, in fact, defective, unsafe and unreliable, because the vehicles were subject to the Second Row Seatbelt Defect.

235. Ford had a duty to disclose that these vehicles were defective, unsafe and unreliable in that the vehicles were subject to the Second Row Seatbelt Defect because Plaintiff and the Michigan Class relied on Ford's representations that the vehicles they were purchasing and retaining were safe and free from defects.

236. The aforementioned concealment was material, because if it had been disclosed, Plaintiff and the Michigan Class would not have bought or retained their vehicles.

237. The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing a new or used motor vehicle.

238. Ford knew or recklessly disregarded that their representations were false because they knew that people had experienced the Second Row Seatbelt Defect. Ford intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

239. Plaintiff and the Michigan Class relied on Ford's reputation—along with their failure to disclose the Second Row Seatbelt Defect and Ford's affirmative assurances that its vehicles were safe and reliable and other similar false statements—in purchasing or retaining the Class Vehicles.

240. As a result of their reliance, Plaintiff and the Michigan Class have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

## FIFTEENTH CAUSE OF ACTION
## UNJUST ENRICHMENT
## (Based on Michigan Law)

241. Plaintiff Frank Beven, on behalf of himself and the Michigan Class, realleges and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

242. Ford has benefited from selling at an unjust profit defective Class Vehicles that had artificially inflated prices due to Ford's concealment of the Second Row Seatbelt Defect, and Plaintiff and Class members have overpaid for these vehicles.

243. Ford has received and retained unjust benefits from Plaintiff and the Michigan Class, and inequity has resulted.

244. It is inequitable and unconscionable for Ford to retain these benefits.

245. Because Ford concealed its fraud and deception, Plaintiff and the Michigan Class were not aware of the true facts concerning the Class Vehicles and did not benefit from Ford's misconduct.

246. Ford knowingly accepted the unjust benefits of its wrongful conduct.

247. As a result of Ford's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the Michigan Class, in an amount to be proven at trial.

## E. Claims Brought on Behalf of the New Jersey Class

### SIXTEENTH CAUSE OF ACTION

### VIOLATIONS OF THE NEW JERSEY COMMERICAL FRAUD ACT

### (N.J. Stat. Ann. § 56:8-1, et seq.)

248. Plaintiffs Derek Cytryn and Jim Paone, on behalf of themselves and the New Jersey Class, reallege and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

249. Plaintiffs, the New Jersey Class members, and Ford are persons under the New Jersey Consumer Fraud Act, N.J. Stat. Ann.§ 56:8-1(d).

250. Ford engaged in "sales" of "merchandise" within the meaning of New Jersey Statutes § 56:8-1(c), (e). Ford's actions as set forth herein occurred in the conduct of trade or commerce.

251. The New Jersey Consumer Fraud Act ("CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment,

suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." N.J. Stat. Ann. § 56:8-2.

252. In the course of Ford's business, it knowingly failed to disclose and actively concealed the dangerous risk of second row inflatable seatbelt failure in the Class Vehicles. This was an unlawful practice in that Ford represented that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; represented that the Class Vehicles are of a particular standard and quality when they are not; and advertised the Class Vehicles with the intent not to sell them as advertised. Ford knew or should have known that its conduct violated the CFA.

253. Ford failed to disclose and actively concealed the dangerous risk of second row inflatable defect failure in the Class Vehicles.

254. Ford engaged in deceptive trade practices prohibited by the New Jersey CFA, including (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Class Vehicles that had the capacity or tendency to deceive Plaintiffs and the New Jersey Class members; (2) representing that the Class Vehicles are of a particular standard, quality, and grade even though Ford knew or should have known they are not; (3) advertising the Class Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Class Vehicles that was known to Ford at the time of advertisement or sale with the intent to induce Plaintiffs and the New Jersey Class members to purchase or lease the Class Vehicles.

255. Ford knew that the second row inflatable seatbelt system in the Class Vehicles was defectively designed or manufactured, would fail without warning, and was not suitable for its intended use. Ford, nevertheless, failed to warn Plaintiffs or the New Jersey Class members about these inherent dangers despite having a duty to do so.

256. Ford had the duty to Plaintiffs and the New Jersey Class members to disclose the Second Row Seatbelt Defect and the defective nature of the Class Vehicles because:

257. Ford was in a superior position to know the true state of facts about the Second Row Seatbelt Defect and associated repair costs in the Class Vehicles;

258. Plaintiffs and the New Jersey Class members could not reasonably have been expected to learn or discover that the Class Vehicles had dangerous defects until manifestation of the defects;

259. Ford knew that Plaintiffs and the New Jersey Class members could not reasonably have been expected to learn about or discover the Second Row Seatbelt Defect and its associated repair costs; and

260. Ford actively concealed the Defect, its causes, and resulting effects, by asserting to Plaintiffs and New Jersey Class members that their second row inflatable seatbelt systems failed for reasons other than the Second Row Seatbelt Defect.

261. Ford's practices significantly affected the public as consumers of the Class Vehicles, which pose an unreasonable risk of death or serious bodily injury to Plaintiffs and the New Jersey Class members, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of second row inflatable seatbelt failure.

262. Whether or not a vehicle's second row inflatable seatbelt systems work properly is a fact a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiffs and the New Jersey Class members bought a Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would have non-defective seatbelts.

263. Ford's deceptive practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the New Jersey Class members, about the true safety and reliability of the Class Vehicles.

264. Ford's unlawful practices have caused substantial harm to consumers.

265. The Second Row Seatbelt Defect alleged herein was material to Plaintiffs and to the New Jersey Class members. Had Plaintiffs and the New Jersey Class members known that the Class Vehicles had these material safety defects, they would not have purchased the Class Vehicles or would not have paid as much for them.

266. Plaintiffs and the New Jersey Class members suffered ascertainable loss of money or property caused by Ford's unlawful practices. Plaintiffs and the New Jersey Class members overpaid for their vehicles and did not receive the benefit of their bargain. The value of the Class Vehicles has diminished now that the safety issues have come to light, and Plaintiffs and the New Jersey Class members now own the Class Vehicles, which are unsafe.

267. Plaintiffs and the New Jersey Class members are entitled to recover legal and/or equitable relief, treble damages, and reasonable attorneys' fees pursuant to New Jersey Statutes Annotated § 56:8-19.

268. Pursuant to New Jersey Statutes Annotated § 56:8-20, Plaintiffs will mail a copy of the complaint to the Attorney General of New Jersey within ten (10) days of filing.

## SEVENTEENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (N.J. Stat. Ann. § 12A:2-314)

269. Plaintiffs Derek Cytryn and Jim Paone, on behalf of themselves and the New Jersey Class, reallege and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

270. Plaintiffs, the New Jersey Class members, and Ford are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

271. Ford is and was at all relevant times a "merchant" with respect to motor vehicles under New Jersey Statutes Annotated § 12A:2-104(1) and a "seller" of motor vehicles under section 2-103(1)(d).

272. The Class Vehicles are and were at all relevant times "goods" within the meaning of New Jersey Statutes Annotated §§ 12A:2-105(1) and 2A-103(1)(h).

273. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to New Jersey Statutes Annotated §§ 12A:2-314 and 2A-212.

274. These vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the brake systems, nor do the Class Vehicles have an adequate fail-safe to protect against brake failure.

275. Ford has been provided notice of these issues by numerous complaints as described herein.

276. As a direct and proximate result of Ford's breach of the warranties of merchantability, Plaintiffs and the New Jersey Class members have been damaged in an amount to be proven at trial.

**EIGHTEENTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(Based on New Jersey Law)**

277. Plaintiffs Derek Cytryn and Jim Paone, on behalf of themselves and the New Jersey Class, reallege and incorporates by reference all paragraphs as though fully set forth herein, and claims as follows:

278. Plaintiffs, the New Jersey Class members, and Ford are persons under the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1(d).

279. Ford had knowledge of the safety defects in the Class Vehicles, which it failed to disclose to Plaintiffs and the New Jersey Class members.

280. As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Ford charged a higher price for its vehicles than the vehicles' true value. Ford

accordingly received a benefit from Plaintiffs and the New Jersey Class members to their detriment.

281. Ford appreciated, accepted and retained the benefits conferred by Plaintiffs and the New Jersey Class members, who without knowledge of the safety defects paid a higher price for vehicles that Plaintiffs would have paid less money for had they known about the Second Row Seatbelt Defect. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

282. Plaintiffs and the New Jersey Class members, therefore, are entitled to restitution and to seek an order establishing Ford as constructive trustees of the profits unjustly obtained, plus interest.

**F. Claims Brought on Behalf of the Pennsylvania Class**

**NINETEENTH CAUSE OF ACTION**

**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

**(73 P.S. § § 201-1 –201-9.2)**

283. Plaintiffs David Mockus and Kevin Kaintz, on behalf of themselves and the Pennsylvania Class, reallege and incorporate by reference all paragraphs as though fully set forth herein, and claims as follow:

284. All of the acts complained of herein were perpetrated by Ford in the course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

285. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania UTPCPL") prohibits unfair or deceptive acts or practices, including: (i) "Representing that goods or services have . . . characteristics, . . . [b]enefits or qualities that they do not have;" (ii) "Representing that goods or services are of a particular standard, quality or grade . . . if they are of another;" (iii) "Advertising goods or services with intent not to sell them as advertised;" and (iv) "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S.

§ 201-2(4). Ford engaged in unlawful trade practices, and unfair or deceptive acts or practices that violated Pennsylvania UTPCPL.

286. The unfair and deceptive practices engaged in by Ford, as described herein, occurred in the course of conduct involving trade or commerce, and constituted unfair methods of competition and unfair or deceptive acts or practices within the meaning of the Pennsylvania UTPCPL.

287. Ford's acts and practices were unfair and created a likelihood of confusion or misunderstanding and misled, deceived, or damaged Plaintiffs and members of the Pennsylvania Class in connection with the sale of the Class Vehicles. Ford's conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission in connection with the sale or advertisement of goods or services, whether or not a person has in fact been misled, deceived, or damaged in violation of the Pennsylvania UTPCPL.

288. Ford's conduct proximately caused injuries to Plaintiffs and the other Pennsylvania members.

289. Plaintiffs and the other Pennsylvania Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Ford's conduct in that Plaintiffs and the other Pennsylvania Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Ford's misrepresentations, fraud, deceptive practices, and omissions.

290. Ford's violations present a continuing risk to Plaintiffs as well as to the general public. Ford's unlawful acts and practices complained of herein affect the public interest.

291. Ford is liable to Plaintiffs and the Pennsylvania Class members for treble their actual damages, or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a).

## TWENTIETH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(13 Pa. C.S.A. § 2315)**

292. Plaintiffs David Mockus and Kevin Kaintz, on behalf of themselves and the Pennsylvania Class, reallege and incorporate by reference all paragraphs as though fully set forth herein, and claims as follow:

293. Ford is and was, at all relevant times, a merchant with respect to the Class Vehicles, under 13 Pa. C.S.A. § 2103(a).

294. The Class Vehicles are and were, at all relevant times, "goods" within the meaning of 13 Pa. C.S.A. § 2105(a).

295. A warranty that the Class Vehicles were in merchantable condition, and fit for their ordinary purpose, is implied by law pursuant to 13 Pa. C.S.A. § 2314.

296. In addition, a warranty that the Class Vehicles were fit for their particular purpose is implied by law pursuant to 13 Pa. C.S.A. § 2315. Ford knew at the time of sale of the Class Vehicles that Plaintiffs and the Pennsylvania Class members intended to use the Class Vehicles in a manner requiring a particular standard of performance and durability, and that Plaintiffs and the Pennsylvania Class members were relying on Ford's skill and judgment to furnish suitable products for this particular purpose.

297. The second row inflatable seatbelt systems installed in the Class Vehicles were defective at the time they left the possession of Ford. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were not fit for their ordinary purpose of providing safe and reliable transportation.

298. The Class Vehicles contain an inherent defect in the second row inflatable seatbelt systems and present an undisclosed safety risk to drivers, occupants, and others. Thus, Ford breached its implied duty of merchantability.

299. Ford cannot disclaim its implied warranties, as it knowingly sold a defective product.

300. Ford knew or should have known that the Class Vehicles posed a safety risk and were defective, and knew or should have known of these breaches of the implied warranties prior to sale of the Class Vehicles to Plaintiffs and the Pennsylvania Class members.

301. Ford was and is in actual or constructive privity with Plaintiffs and the Pennsylvania Class members.

302. Plaintiffs had and continue to have sufficient direct dealings with Ford and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract. Ford's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit only the ultimate purchasers of the Class Vehicles, i.e., Plaintiffs and the Pennsylvania Class members.

303. Privity is not required to assert this claim because Plaintiffs and the Pennsylvania Class members are intended third party beneficiaries of contracts between Ford and its dealers, franchisees, representatives, and agents.

304. By extending written warranties to end user purchasers, Ford brought itself into privity with Plaintiffs and the Pennsylvania Class members.

305. Ford has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

306. Plaintiffs and the Pennsylvania Class members used the second row inflatable seatbelt systems installed in the Class Vehicles in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Ford or by operation of law in light of Ford's unconscionable conduct.

307. Ford had actual knowledge of, and received timely notice of the Second Row Seatbelt Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

308. In addition, Ford received numerous consumer complaints and other notices from customers advising of the Second Row Seatbelt in the Class Vehicles.

309. As a direct and proximate result of Ford's breach of its implied warranties, Plaintiff and the Pennsylvania Class members bought the Class Vehicles without knowledge of the Second Row Seatbelt Defect or their serious safety risks and purchased unsafe products which could not be used for their intended use.

310. As a direct and proximate result of Ford's breach of its implied warranties, Plaintiff and the Pennsylvania Class members have suffered damages and Ford was unjustly enriched by keeping the profits for its unsafe products while never having to incur the cost of repair, replacement or a recall.

## TWENTY-FIRST CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
**(Based on Pennsylvania Law)**

311. Plaintiffs David Mockus and Kevin Kaintz, on behalf of themselves and the Pennsylvania Class, reallege and incorporate by reference all paragraphs as though fully set forth herein, and claims as follow:

312. Plaintiffs and Pennsylvania Class members entered into contracts with Defendants in connection with the sale of the Class Vehicles.

313. Plaintiffs and Pennsylvania Class members gave fair and reasonable consideration and performed all their material obligations under the contracts.

314. Implied in all contracts is a covenant of good faith and fair dealing, imposing a duty on the parties to act in good faith and deal fairly with one another.

315. Plaintiffs and Pennsylvania Class members had a reasonable expectation that, when they purchased their Class Vehicles from Ford, the Class Vehicles would be free of defects, especially defects that affected the safety and operability of the Class Vehicles.

316. Ford used its discretion to install defective second row inflatable seatbelt systems into the Class Vehicles without informing Plaintiffs and Pennsylvania Class members that the inferior technology would create a safety defect in the Class Vehicles.

317. Plaintiffs and Pennsylvania Class members had no reason to know Ford had placed defective second row inflatable seatbelt systems into the Class Vehicles.

318. By creating and promoting an automobile with a latent safety defect, Ford breached the covenant of good faith and fair dealing and breached its contractual duty to Plaintiffs and Pennsylvania Class members.

319. As a direct and proximate result of Ford's breach, Plaintiffs and Pennsylvania Class members suffered damages, including being induced to purchase the defective Class Vehicles.

## TWENTY-SECOND CAUSE OF ACTION

## UNJUST ENRICHMENT

**(Based on Pennsylvania Law)**

320. Plaintiffs David Mockus and Kevin Kaintz, on behalf of themselves and the Pennsylvania Class, reallege and incorporate by reference all paragraphs as though fully set forth herein, and claims as follow:

321. Ford has long known that its second row inflatable seatbelt systems do not operate properly and the seatbelts fail to function as intended and expected, posing a serious safety risk, which it concealed and failed to disclose to Plaintiffs and Pennsylvania Class members.

322. As a result of its fraudulent acts and omissions related to the Defect, Ford obtained monies which rightfully belong to Plaintiffs and Pennsylvania Class members to the detriment of Plaintiffs and Pennsylvania Class members.

323. Ford appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and Pennsylvania Class members who, without knowledge of the Defect, paid a higher price for their vehicles which actually had lower values. Ford also received monies

for class vehicles that Plaintiffs and Pennsylvania Class members would not have otherwise purchased or leased.

324. It would be inequitable and unjust for Ford to retain these wrongfully obtained profits.

325. Ford's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

326. Plaintiffs and Pennsylvania Class members are entitled to restitution of the profits unjustly obtained plus interest.

## IX PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and Members of the Class, respectfully requests that this Court:

a. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

b. appoint Plaintiffs as the representatives of their respective state class(es) and their counsel as Class counsel;

c. award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class Members are entitled;

d. award pre-judgment and post-judgment interest on such monetary relief;

e. grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and cause of the Second Row Seatbelt Defect.

f. award reasonable attorneys' fees and costs; and

g. grant such further relief that this Court deems appropriate.

Dated: March 3, 2026

Respectfully submitted,

**McCUNE LAW GROUP**

**FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**

By: */s/ Todd A. Walburg*
Todd A. Walburg (Admitted to EDMI)

Todd A. Walburg (Admitted to EDMI)
taw@mccunelawgroup.com
David C. Wright (Admitted to EDMI)
dcw@mccunelawgroup.com
Scott B. Baez (CA Bar No. 330485)
sbb@mccunelawgroup.com
**McCUNE LAW GROUP**
31 W. Stuart Avenue, Suite 300
Redlands, California 92374
Telephone: (909) 557-1250

Kevin C. Riddle (MI Bar No. P57435)
k.riddle@fiegerlaw.com
**FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**
19390 West 10 Mile Road
Southfield, MI 48075-2463
Telephone: (248) 355-5555

***Attorneys for Plaintiff and the Putative Class***

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, hereby demand a trial by jury on all issues so triable.

Dated: March 3, 2026

Respectfully submitted,

**McCUNE LAW GROUP**

**FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**

By: *\/s\/ Todd A. Walburg*
Todd A. Walburg

Todd A. Walburg (Admitted to EDMI)
taw@mccunelawgroup.com
David C. Wright (Admitted to EDMI)
dcw@mccunelawgroup.com
Scott B. Baez (CA Bar No. 330485)
sbb@mccunelawgroup.com
**McCUNE LAW GROUP**
31 W. Stuart Avenue, Suite 300
Redlands, California 92374
Telephone: (909) 557-1250

Kevin C. Riddle (MI Bar No. P57435)
k.riddle@fiegerlaw.com
**FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.**
19390 West 10 Mile Road
Southfield, MI 48075-2463
Telephone: (248) 355-5555

***Attorneys for Plaintiffs and the Putative Class***